IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 04-cv-00438-JLK-MEH

JOSEPH M. ALIOTO,

    Plaintiff and Counterclaim Defendant,

v.

TIMOTHY C. HOILES,

    Defendant and Counterclaim Plaintiff.

**MEMORANDUM OPINION AND ORDER**

Based on the parties' briefing and new California case law, the following issues previously ruled on by Judge Figa are reconsidered.

**1.**     **Compliance with Cal. Bus. & Prof. Code § 6147**

Hoiles has moved for reconsideration of Judge Figa's denial of summary judgment on the issue of the fee agreement's compliance with § 6147. Judge Figa denied both parties' summary judgment motions and held that whether the agreement complied with California law would be decided by the jury. The parties had urged, however, that compliance with the statutory requirements should be decided by the court. Having reconsidered the issue, I hold that this issue should not be submitted to the jury. Although the pertinent cases do not expressly state that compliance with § 6147 is a matter of law to be decided by the court rather than the jury, the issue was not submitted to the jury in any of those cases. Rather, the opinions indicate the trial

courts each made a pretrial determination regarding the fee agreements' statutory compliance.

I hold that the fee agreement does not comply with § 6147, which provides in pertinent part:

> (a) An attorney who contracts to represent a client on a contingency fee basis shall, at the time the contract is entered into, provide a duplicate copy of the contract, signed by both the attorney and the client, or the client's guardian or representative, to the plaintiff, or to the client's guardian or representative. The contract shall be in writing and shall include, but is not limited to, all of the following:
>
>> (1) A statement of the contingency fee rate that the client and attorney have agreed upon.
>>
>> (2) A statement as to how disbursements and costs incurred in connection with the prosecution or settlement of the claim will affect the contingency fee and the client's recovery.
>>
>> (3) A statement as to what extent, if any, the client could be required to pay any compensation to the attorney for related matters that arise out of their relationship not covered by their contingency fee contract. This may include any amounts collected for the plaintiff by the attorney.
>>
>> (4) Unless the claim is subject to the provisions of Section 6146, a statement that the fee is not set by law but is negotiable between attorney and client.
>> . . . .
>
> (b) Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee.

Cal. Bus. & Prof. Code § 6147(a), (b).

Hoiles's argument persuades me that the agreement is voidable because it does not contain a statement regarding "related matters" under subsection (a)(3). Several

California courts have held that fee agreements not setting forth all of the statutorily required statements are voidable. Most recently, the California Court of Appeals in *Fergus v. Songer* summarily held that a fee agreement failed to comply with § 6147 and was voidable because it did not include a statement that the fee was negotiable. ___ Cal. Rptr. 3d ___, 2007 WL 1290238, at *2 (Ct. App. 2007). Judge Figa did not have the benefit of the *Fergus* decision. Moreover, the *Fergus* court held it was irrelevant whether the client knew the fee was negotiable, noting that, "[i]rrespective of whether the client has knowledge of the information required to be in the contingency fee agreement, the agreement is voidable if it fails to set forth that information in writing." *Id.* at *12.

In an earlier case, *Alderman v. Hamilton*, the California Court of Appeals held that the clients had the right to void a fee agreement because it did not include a statement of how disbursements would affect the contingency fee, did not discuss related matters, and did not state that the fee was negotiable. 205 Cal. App. 3d 1033, 1038 (1988). This holding followed the court's statement that "[i]n order to protect clients and to assure fee agreements are fair and understood by clients, the Legislature enacted numerous statutes specifically delineating the required contents of . . . attorney

fee agreements."[1]  *Id.* at 1037.  Finally, in a recent unpublished opinion,[2] the court of appeals similarly held that a fee agreement was voidable because it did not contain a statement regarding related matters or a statement that the fee was negotiable. *Dalgarn v. Talon Instruments, Inc.*, No. B160640, 2004 WL 886326, at *4–5 (Cal. Ct. App. April 27, 2004).  In dismissing the attorney's argument that "the clients already knew these things," the court stated:

> It is not our function to engraft upon this clear language [of § 6147(b)] an exception for those failures to comply that are, in all the circumstances of a particular case, unimportant.  Section 6147 tells an attorney exactly what he or she must include in a retainer agreement that provides for a percentage fee, and compliance is easy.  We will not look for ways to excuse noncompliance, in derogation of the statutory language.

*Id.* at *5.  *See also Tishgart v. DeJesus*, No. A104244, 2004 WL 1941193, at *3 (Cal. Ct. App. Aug. 31, 2004) (fee agreement voidable for lack of statement regarding related matters).

Alioto makes two arguments that the fee agreement is valid under § 6147 notwithstanding the lack of a statement regarding related matters.  First, Alioto asserts there were no such related matters to identify because Alioto had agreed to perform all

---

[1] Alioto argues that *Alderman* was "rejected" in *Franklin v. Appel*, 8 Cal. App. 4th 875 (1992). However, the court held in *Franklin* only that § 6147 applies to contingency fee agreements involving litigation and that *Alderman*'s holding that the provision applies to all contingency fee agreements was overbroad.  *Id.* at 886.  *Franklin* did not purport to criticize *Alderman* with respect to its analysis of a fee agreement's compliance with § 6147.

[2] California Rule of Court 977(a) prohibits courts and parties from citing or relying on unpublished opinions.  However, federal courts have nevertheless cited unpublished California appellate opinions, noting that federal courts are not bound by the California Rules of Court and often stating that such cases are being cited as persuasive authority rather than a binding statement of California law.  *E.g.*, *Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dep't*, 387 F. Supp. 2d 1084, 1103 n.7 (N.D. Cal. 2005). Both parties rely extensively on unpublished decisions in their briefing, and there are quite a few on the subject of validity of fee agreements.

related legal work; moreover, there is evidence indicating that Hoiles understood the unlimited scope of the representation.  However, § 6147 requires "[a] statement as to *what extent, if any*, the client could be required to pay any compensation to the attorney for related matters that arise out of their relationship not covered by their contingency fee contract.  (Emphasis added).  Under the plain language of this provision, some sort of statement about related matters is required, even if it is a statement that there are *no* related matters not covered by the agreement for which the client could be required to pay compensation.  Based on the authority cited above, failure to include such a specifically required statement renders the fee agreement noncompliant with § 6147 and voidable at the option of the client.  In addition, under *Fergus* and *Dalgarn*, Hoiles's knowledge of the information regarding related matters is immaterial to whether the agreement complies with § 6147.

Alioto also argues the fee agreement "substantially complies" with § 6147 and substantial compliance is all that is required under California law.  "In general, substantial compliance is the governing test for determining whether statutory requirements have been met.  Strict compliance is required only when the intent of the statute can only be served by such a test."  *Nat'l Parks & Conservation Ass'n v. County of Riverside*, 50 Cal. Rptr. 2d 339, 350 (Ct. App. 1986) (internal citations omitted).  "Substantial compliance means actual compliance in respect to the substance essential to every reasonable objective of the statute."  *Id.* (quotation marks and ellipsis omitted).  "Substantial" obviously does not permit compliance with most or a majority of the objective to suffice.

Alioto cites two unpublished cases that, with no analysis, utilize a "substantial compliance" standard with respect to a fee agreement's compliance with § 6148. *Robert L. Rentto Prof'l Law Corp. v. Four Seasons No. 1500, Ltd.*, No. D044967, 2005 WL 2767186, at *4 (Cal. Ct. App. Oct. 26, 2005) (record supported trial court's conclusion that the fee agreement "substantially complied" with § 6148); *Triano v. Popov*, No. A106857, 2005 WL 1230766, at *3 (Cal. Ct. App. May 24, 2005) (noting that "it remains to be determined whether there was substantial compliance [with § 6148] that precludes any right to rescind").

Alioto also cites one opinion, also unpublished, in which the court expressly held that a fee agreement may be valid even if it does not comply in every respect with the statutory requirements. *Algoe v. Kniss*, No. B160743, 2004 WL 1925982, at *6 (Cal. Ct. App. Aug. 31, 2004). In *Algoe*, the court noted that, despite the lack of the attorney's signature on the fee agreement, "the spirit of section 6147 was complied with where [the client] was fully cognizant of the contingency fee provisions, gave his informed written consent by signing the agreement and received a copy, and where [the attorney] expressed his own agreement by performing under its terms." *Id.* The opinion is not entirely persuasive, however, because the court went on to note that under § 6147(b) the client "could either declare the agreement void or affirm the agreement and perform according to its terms," and that the client had elected to affirm the agreement by suing to enforce it. *Id.* at *7. Thus, it is unclear whether the court found the agreement valid because it sufficiently complied with § 6147, because the client elected to affirm rather than void the agreement, or both. In either event, the

attorney's signature is a formality and not essential to a reasonable objective of the statute.

In sum, the only published authority on this issue indicates that any noncompliance with the terms of § 6147, regardless of whether it is considered material or prejudices the client, renders the agreement voidable at the client's option. Thus, under California law, an agreement that does not contain the required statement regarding related matters is voidable for failure to comply with § 6147. Under the plain language of the related matters provision, such a statement is required even if there are no related matters to identify. Accordingly, I hold as a matter of law the fee agreement between Alioto and Hoiles does not comply with § 6147 and Hoiles had the right to void the agreement.

**2. Waiver of Right to Void Agreement / Ratification of Agreement**

This issue was raised in Hoiles's ninth motion *in limine*, in which he sought to exclude evidence that he had waived his right to void the agreement. In *Fergus*, the court held ratification of a fee agreement that is voidable under § 6147 requires knowledge by the client of his right to void the agreement. ___ Cal. Rptr. 3d at ___, 2007 WL 1290238, at *11. Hoiles argues in his trial brief that there is no evidence he had any knowledge of his rights under California law during Alioto's representation of him and that "Hoiles will unequivocally testify at trial that he never knew the Fee Agreement was voidable under California law at any time during his relationship with Alioto." Alioto, on the other hand, contends that, assuming noncompliance with § 6147, there is evidence that Hoiles knew of his right to void the fee agreement well before

asserting it. Specifically, Alioto points to evidence that several lawyers other than Alioto reviewed the fee agreement, and that when Hoiles first filed a complaint in this action on March 5, 2004, seeking declaratory relief, he still did not seek to rescind the contract despite the fact that he was represented by the same counsel who continues to represent him to this day. Only in August 2004 with the filing of his First Amended Complaint did Hoiles assert the fee agreement was void.

Judge Figa denied the motion *in limine* and held the question of waiver was a fact issue for the jury. I agree with his holding: The agreement does not comply with § 6147, and the ratification issue is for the jury. If the jury finds there was no ratification, the form of verdict will direct the jury not to consider Alioto's remaining claims. If the jury finds Hoiles ratified the fee agreement, however, then Alioto's breach of contract claim stands irrespective of the agreement's noncompliance with § 6147 and *quantum meruit* will not be determined. Thus, there will still need to be jury instructions regarding the breach of contract and fraud claims in the event the jury finds that Hoiles ratified the agreement with knowledge of his right to void it.

**3.    Applicability of § 6148 and Cal. R. Prof. Conduct 3-300**

This issue was raised in Alioto's second motion *in limine*, in which he moved to exclude evidence at trial of the fee agreement's compliance with § 6148 and rule 3-300 on the grounds that they do not apply to the agreement. Judge Figa ruled the agreement was required to comply with both of these provisions and denied the motion. Alioto again argues in his trial brief that § 6148 and rule 3-300 are not applicable.

a.  § 6148

Section 6147 contains the statutory requirements for contingency fee agreements, and § 6148 contains requirements for agreements in cases "not coming within Section 6147." Judge Figa held the agreement in question had to comply with both statutes. The only case directly on point is a California Bar Court opinion in a disciplinary proceeding in which the court applied both statutes to a retainer and contingency fee agreement. *In re Van Sickle*, 2006 WL 2465633, at *10 n.17 (Cal. St. Bar Ct. 2006). Notably, Alioto does not argue the agreement complies with § 6148, just that § 6148 does not apply. If it does apply, however, I do not think noncompliance with § 6148 would render the contingent portion of the agreement voidable. Moreover, because the agreement does not comply with § 6147 as a matter of law, compliance with § 6148 is irrelevant.

    b. Rule 3-300

Rule 3-300 places certain requirements on attorneys who knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client. Cal. R. Prof. Conduct 3-300. The California Supreme Court has held an attorney's charging lien, which is a "lien upon the fund or judgment which [the attorney] has recovered for his compensation," is a security interest in the proceeds of the litigation. *Fletcher v. Davis*, 33 Cal. 4th 61, 66–67 (2004). The *Fletcher* court held a lien against a client's future recovery to secure *hourly* fees is an "adverse interest within the meaning of rule 3-300" because it "could significantly impair the client's interest by delaying payment of the recovery or settlement proceeds until any disputes over the lien can be resolved." *Id.* at 68–69.

The court expressly "d[id] not decide whether rule 3-300 applies to a contingency-fee arrangement coupled with a lien on the client's prospective recovery in the same proceeding." *Id.* at 70 n.3.  Nor has an appellate court addressed that specific issue in any other opinion.  The Standing Committee on Professional Responsibility and Conduct of the State Bar of California, however, issued an advisory ethics opinion that does address the issue, concluding that a charging lien created by a contingency fee agreement does *not* create an adverse interest to the client under rule 3-300, and thus the agreement need not comply with the rule's requirements.  Cal. Eth. Op. 2006-170, 2006 WL 1933278 (Cal. St. Bar. Comm. Prof. Resp.).

The ethics opinion indicates the fee agreement between Alioto and Hoiles should not have to comply with rule 3-300.  Hoiles contends this is not a typical contingent fee agreement because Alioto is essentially claiming an interest in Hoiles's and his family's preexisting property—their shares in the company.  The fee agreement, however, states that Alioto is representing Hoiles "in the Freedom Communications matter" and is entitled to a percentage of "anything recovered."  This language does not appear to create a special interest other than an interest in Hoiles's recovery as the source of Alioto's fee.  Accordingly, the fee agreement does not need to comply with rule 3-300.  Moreover, because the agreement does not comply with § 6147, compliance with rule 3-300, like compliance with § 6148, is irrelevant.

**4.   Fraud Claim**

Although the Tenth Circuit Court of Appeals reinstated Alioto's fraud claim, by Alioto's own admission such a claim only comes into play if the jury decides the breach of contract claim, but awards damages based only on the number of shares of Freedom stock owned by Hoiles and not on the shares owned by his ex-wife and daughters as well. Alioto did not appeal the issue of Judge Figa's application of Colorado law to the fraud claim, although this time around both parties seem to be arguing the claim under California law. At this point I don't think this choice of law issue makes any difference.

**5.   Quantum Meruit**

If the fee agreement is voidable and Hoiles did not ratify it, Alioto is entitled to recover for the reasonable value of his services. The jury instructions in the first trial stated, based on Colorado law, that the jury could not "consider any of the fee percentages" in the agreement in determining the reasonable value of Alioto's services. Alioto appealed that instruction, but the Tenth Circuit Court of Appeals did not reach the issue. In Hoiles's eleventh motion *in limine*, he sought to exclude evidence of the reasonable value of Alioto's services on the grounds that the jury's findings in the first trial are binding. Judge Figa denied the motion on the grounds that under California law the contingency fee is a factor that may be considered.

Hoiles now argues that the ruling must be revisited in light of *Fergus*, in which the court held:

> Where, as here, a client exercises his right to void a contingency fee agreement, section 6147 does not permit the trier of fact to consider the contingent nature of the fee arrangement in determining a reasonable fee.

11

> If the contingency fee agreement is void, there is no contingency fee agreement. . . . The deterrent and protective purposes of section 6147 would be impaired if an attorney who was barred from enforcing a contingency fee agreement would nevertheless be entitled to a percentage of the recovery based on a contingent risk factor. The attorney would in effect be receiving a contingency fee even though the contingency fee agreement had been voided by the client.

*Fergus*, ___ Cal. Rptr. 3d at ___, 2007 WL 1290238, at *13. An unpublished court of appeals opinion provides further support for Hoiles's argument that an invalid agreement's contingent fee should not be considered in awarding *quantum meruit* damages. *Zweig v. Kwon*, No. B153064, 2003 WL 150107 (Cal. Ct. App. Jan. 22, 2003) (attorneys were not entitled under *quantum meruit* to be awarded their contingent fee when the contract on which the fee was based was invalid under § 6147; such an award would contradict the policies underlying § 6147, which "exists to protect clients, to assure that fee agreements are fair, and to assure that clients understand them").

Alioto argues that *Fergus* is "bereft of authority" and "contrary to prevailing California law," citing a California state district court case and two Ninth Circuit cases applying California law. The district court case is on point, but of course does not constitute binding California law. *Herbold v. Millard*, Case No. CV 02-01639 (C.D. Cal. Aug. 6, 2004). In *Herbold*, the court held a fee agreement was unenforceable under § 6147 because it did not contain a statement that the fee was negotiable. In awarding a fee of 35% of the client's recovery, the court took into consideration the 40% fee contained in the invalid agreement, relying on a State Bar opinion for the proposition that "when a fee agreement . . . is freely bargained for and does not provide for an unconscionable fee, the contract price is the best indicator of the reasonable value of

the attorney's services." *Id.* at 7.  In light of the *Fergus* decision, I am not persuaded by *Herbold*.

The two Ninth Circuit cases cited by Alioto are distinguishable from this case.  In *Fitzsimmons v. Jackson*, 51 B.R. 600 (9th Cir. BAP 1985), the court held a contingent fee agreement relating to representation in a condemnation action was unenforceable because it was not reduced to writing and signed by all parties.  In determining the attorney's *quantum meruit* award, the trial court "looked to the customary fee arrangement in condemnation cases of this nature, as well as various other factors," and awarded fees on a contingent basis.  *Id.* at 605, 609.  The court of appeals affirmed, but expressly noted the terms of the contract were not relevant to an award of fees based on *quantum meruit*.  *Id.* at 609–10.  Rather, the court of appeals approved of the trial court's determination that a contingent fee was the usual and customary arrangement in that type of case and the trial court's consideration of other factors in setting the fee.  *Id.* at 610–11.  Thus, *Fitzsimmons* does not, as Alioto contends, support the proposition that the contingent nature of an invalid fee agreement or the particular percentage contained in the agreement is relevant to an award of fees for the reasonable value of an attorney's services.  To the contrary, the case supports Hoiles's position.

In the other Ninth Circuit case cited by Alioto, the issue was the effect on a contingent fee agreement of the client's subsequent bankruptcy.  *Pac. Far E. Line, Inc. v. Alioto*, 654 F.2d 664 (9th Cir. 1981).  The attorney in that case (coincidentally the same Alioto who is the plaintiff in this case) was appointed special counsel by the

13

bankruptcy court, and a bankruptcy rule prohibited contingent fee contracts for special counsel. The district court awarded a fee of 15 percent based on the contingent fee agreement, which the court held "represented reasonable compensation for Alioto's services." *Id.* at 667. The amount of the fee was not appealed, and the Ninth Circuit "d[id] not question the adequacy of the fee under California's standard of reasonableness." *Id.* at 670.

Leaving aside that the court of appeals did not address the propriety of the district court's fee award, there is a significant distinction between a fee agreement's being held unenforceable by virtue of an intervening bankruptcy and a fee agreement's voidability for failure to comply with § 6147. As noted above, § 6147 exists "to assure fee agreements are fair and understood by clients." *Alderman*, 205 Cal. App. 3d at 1037. Accordingly, the burden is on the attorney to ensure that his contingent fee agreements contain all of the required provisions under the statute. The public policy behind § 6147 could not be more clear. On the other hand, the contingent fee agreement in *Pacific Far East Line* became unenforceable through no fault of the attorney's or problem with the fee agreement itself; it was solely due to the client's having declared bankruptcy after the agreement was executed, but before a settlement was reached. Accordingly, Alioto's attempt to use this case to demonstrate California law on the relevance of a contingent fee percentage in calculating a *quantum meruit* fee award is unavailing.

Again, *Fergus* is the only published, appellate opinion to address the issue directly and Alioto's argument that *Fergus* contradicts prevailing California law lacks

14

merit.  Accordingly, I reconsider Judge Figa's ruling on this issue in light of *Fergus*.  As noted above, Judge Figa instructed the jury in the first trial in relation to the calculation of *quantum meruit* damages that "you are instructed not to consider any of the fee percentages in [the fee agreement] in connection with any deliberations or answers you may have on this instruction. However, in other areas you may, but are not required to, consider this document as some evidence of the agreement, if any, of Plaintiff Hoiles and Defendant Alioto regarding legal services."  Alioto appealed this instruction, but the Tenth Circuit did not reach it.  Given that California law mirrors Colorado law on this issue, there is no need to resubmit it to the jury.

Alioto also challenges Judge Figa's instruction in the first trial that the jury should not consider the work performed by Mr. Shulman, Mr. Schwartz, or Mr. Stratmore – with whom Alioto had a fee-sharing agreement – in calculating the *quantum meruit* award.  The only authority Alioto cites in support of an instruction to consider the work performed by those attorneys in calculating the award is *Huskinson & Brown, LLP v. Wolf*, 32 Cal. 4th 453 (2004).  That case, however, involved a dispute between two lawyers who had entered into a fee-sharing agreement that failed to comply with the rules of professional conduct.  The defendant attorney received his fees from the client, but failed to pay the plaintiff 25% of those fees as contemplated by their fee-sharing agreement.  *Id.* at 456.  The court held the plaintiff was entitled to recover fees in *quantum meruit* for the reasonable value of services rendered despite the fact that the agreement was unenforceable.  *Id.* at 464.  *Wolf* did not involve the issue at hand of whether an attorney is entitled to recover a fee in *quantum meruit*  from

the client on behalf of work performed by other attorneys who have entered into a fee-sharing agreement with him. Moreover, it is unclear how Alioto has standing to recover fees in *quantum meruit* on behalf of other attorneys who are not parties to this action, and Alioto provides no argument on this issue.

Alioto did not challenge any other aspects of Judge Figa's instructions from the first trial on *quantum meruit* damages, nor has he challenged the set-off of the $500,000 retainer, so the jury's *quantum meruit* award from the first trial will stand, and there is no reason to retry that claim.

**6.     Conclusion**

To sum up, I hold as a matter of law that the fee agreement is voidable for noncompliance with § 6147 and California law does not allow consideration of the contingent fee percentage in the agreement in awarding a fee under *quantum meruit* principles. The only definite jury issue is whether Hoiles ratified the fee agreement with knowledge of its voidability. If the jury finds that Hoiles ratified the agreement, the breach of contract claim and potentially the fraud claim will also have to be decided by the jury. If the jury finds that Hoiles did not ratify the agreement, the *quantum meruit* award from the first trial will be reinstated.

In light of these rulings, the parties are again asked to consider mediation.

DATED:  May 29, 2007.

                                                              **s/John L. Kane**
                                                              SENIOR U.S. DISTRICT JUDGE