IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 04-cv-00438-JLK-MEH

JOSEPH M. ALIOTO,

    Plaintiff and Counterclaim Defendant,

v.

TIMOTHY C. HOILES,

    Defendant and Counterclaim Plaintiff.

---

**AMENDED ORDER ON MOTION FOR PROTECTIVE ORDER**

---

THIS MATTER is before the Court on Defendant Timothy Hoiles's Motion for Protective Order (doc. # 514), filed on July 2, 2007. Hoiles filed the motion in response to certain requests for production served on him by Plaintiff Joseph Alioto pursuant to this Court's June 14, 2007 Order (doc. # 508) permitting Alioto to conduct limited discovery "relevant to the ratification issue." As is evident from the briefing, the parties substantially disagree on the appropriate scope of such discovery.

**I.**    **California Law on Ratification**

Because the instant discovery dispute stems mainly from the parties' disagreement over the state of California law on ratification of fee agreements that are otherwise voidable for failure to comply with the applicable statutory requirements, I begin with a discussion of California law on this issue. I first emphasize, however, that a fee agreement between an attorney and a client is not considered an ordinary, arms-length contract. Instead, "[i]n order to protect clients and to assure fee agreements are

fair and understood by clients, the Legislature enacted numerous statutes specifically delineating the required contents of most attorney fee agreements." *Alderman v. Hamilton*, 205 Cal. App. 3d 1033, 1037 (1988). Thus, the burden is on the attorney to ensure fee agreements are statutorily compliant, and such agreements are "strictly construed against the attorney." *Id.* I have already held the agreement in question fails to comply with Cal. Bus. & Prof. Code § 6147, which governs contingency fee agreements, and such noncompliance rendered the agreement voidable at the option of Hoiles, the client. Cal. Bus. & Prof. Code § 6147(b); *see also Alderman*, 205 Cal. App. 3d at 1038 (clients have "an absolute right to void" an agreement that does not comply with § 6147 "before or after services [a]re performed").

   A.   **Knowledge Requirement**

Alioto contends Hoiles ratified the fee agreement, and the agreement is thus enforceable despite its noncompliance with § 6147. The California Court of Appeal recently clarified, at least in part, what an attorney must show to meet his burden of proving a client ratified a voidable agreement, holding:

> Assuming that [the contingency fee agreement] could have been ratified, ratification would have required knowledge by [the client] of his right to void the agreement. "[I]t is an inherent element of ratification that the party to be charged with it must have fully known what he was doing. . . . [T]he very essence either of an election or ratification is that it is done advisedly, with full knowledge of the party's rights."

*Fergus v. Songer*, 59 Cal. Rptr. 3d 273, 289 (Ct. App. 2007) (quoting *Brown v. Rouse*, 104 Cal. 672, 676 (1894) (internal quotation marks omitted) (alteration in original)); *see also King v. Fox*, 851 N.E.2d 1184, 1192 (N.Y. 2006) ("ratification [of a voidable agreement] can occur so long as the client has both a full understanding of the facts

that made the agreement voidable and knowledge of his or her rights as a client"). The court of appeals held in *Fergus* that the trial court did not err in holding the agreement had not been ratified as a matter of law because "[n]o evidence was presented that [the client] expressly or impliedly consented to the . . . contingency fee agreement *after* learning of its voidability." *Fergus*, 59 Cal. Rptr. 3d at 289 (emphasis added).

    **B.**    <u>**Imputed Knowledge**</u>

Alioto asserts the knowledge of Hoiles's attorneys is relevant to the ratification issue because an attorney's knowledge may be imputed to his or her client. However, in accordance with the requirement that a client have full knowledge of his rights to ratify a voidable agreement, I decline to apply the general law imputing the knowledge of attorneys to their clients in this situation. In *Gallagher v. California Pacific Title & Trust Co.*, the California Court of Appeal, in the context of evaluating whether a principal had ratified an agent's unauthorized act, noted: "The doctrine of constructive knowledge of material facts or imputation of knowledge of such facts does not generally obtain in the case of ratification, as ordinarily it is what the principal knows, and not what he has mere legal notice of, that is to be considered in determining whether there has been ratification." 57 P.2d 195, 201 (Cal. Ct. App. 1936) (quotation omitted). This same reasoning applies to a client's knowledge regarding the voidability of a fee agreement and requires actual knowledge on the client's part to ratify an otherwise voidable agreement. To hold otherwise would vitiate the "inherent element of ratification that the party to be charged with it must have fully known what he was doing" and would undermine the purpose of § 6147 and its counterparts, which is to protect clients. *Fergus*, 59 Cal. Rptr. 3d at 289 (quoting *Brown*, 104 Cal. at 676).

### C. <u>Voiding the Fee Agreement</u>

Also relevant to the ratification issue is the question of when Hoiles exercised his right to void the contingency fee agreement. The effect of ratification is "to extinguish the power of avoidance." *Triano v. Popov*, No. A106857, 2005 WL 1230766, at *3 (Cal. Ct. App. May 24, 2005) (unpublished opinion)[1] (quoting Restatement (Second) of Contracts § 7). Thus, because Hoiles could only have extinguished his right to avoid the agreement by ratifying it *before* he exercised that right, documents prepared and communications that occurred after Hoiles voided the agreement are not relevant to the ratification issue. *See Fergus*, 59 Cal. Rptr. 3d at 289 (although client wrote letters to attorney recognizing attorney's entitlement to contingency fee before voiding the agreement, letters did not constitute ratification because they did not acknowledge, and there was no evidence the client had knowledge at that time of, the agreement's failure to comply with the requirements of § 6147).

Hoiles contends he voided the agreement on January 21, 2004, the date he instructed Alioto "to take no further actions as a lawyer on [Hoiles's] behalf" and offered to pay Alioto an hourly fee for his services. Ex. 6 to Def.'s Mot. Alternatively, Hoiles asserts he voided the agreement at the very latest on March 5, 2004, the date he

---

[1] As noted in my prior Order regarding the enforceability of the fee agreement, California Rule of Court 977(a) prohibits courts and parties from citing or relying on unpublished opinions. However, federal courts have nevertheless cited unpublished California appellate opinions, noting that federal courts are not bound by the California Rules of Court and often stating that such cases are being cited as persuasive authority rather than a binding statement of California law. *E.g., Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dep't*, 387 F. Supp. 2d 1084, 1103 n.7 (N.D. Cal. 2005). Both parties have relied extensively on unpublished decisions in their briefing in this case, and there are quite a few on the subject of enforceability of fee agreements.

originally filed this action.[2]  Alioto, however, asserts Hoiles did not void the agreement until August 30, 2004, the date he tendered an amended complaint that for the first time specifically alleged the fee agreement failed to comply with the standards mandated by applicable state law.

California law does not place a high burden on a client to exercise his or her right to void a fee agreement that does not comply with the applicable legal requirements. For example, in *Alderman*, the clients voided the contingency fee provision of a contract "when they denied that the contract was enforceable and refused to pay any moneys" to the attorney pursuant to that provision.  205 Cal. App. 3d at 1038.  The court of appeals reached a similar conclusion in *Dalgarn v. Talon Instruments, Inc.*, No. B160640, 2004 WL 886326 (Cal. Ct. App. Apr. 27, 2004), in which the parties entered into a fee agreement providing the attorney's payment was contingent on the amount of the clients' recovery in a malicious prosecution suit.  After a substantial jury verdict was entered in favor of the clients in that action (which was eventually settled), the attorney requested an advance payment under the contingency arrangement.  *Id.* at *2.  In response, the clients wrote to the attorney stating an "intention" to pay the attorney $225,000 for his services, an amount far less than that due under the contingency arrangement.  *Id.*  The clients also did not directly respond to subsequent queries by the attorney as to whether the client denied having made the contingency fee agreement. *Id.* at *3.  The court held the fee agreement did not comply with § 6147 and that, although the clients had "not yet explicitly announced their intention to void the

---

[2] Hoiles was originally the plaintiff in this action and Alioto the defendant.  After the Tenth Circuit remanded the case, the parties were realigned to reflect their current designations.

agreement, . . . the conduct of clients, as evidenced by the content of the [above-described] correspondence . . . and by the client's position taken in this litigation [that the agreement was unenforceable], clearly and sufficiently manifest the clients' decision not to pay a fee calculated as a percentage of the settlements. . . . More is not required to void the agreement." *Id.* at *5.

Finally, I find guidance in *Service Employees International Union v. Siegel*, No. A104959, 2004 WL 2251915 (Cal. Ct. App. Oct. 7, 2004), which involved a written retainer agreement between an attorney and a local union client. After the union was placed in emergency trusteeship, the new trustee sent a letter to the attorney stating the attorney was "not authorized to provide any legal services on behalf of Local 87 without prior authorization" and requesting the attorney to contact the trustee's counsel "about the nature of the work that was covered by [the] retainer." *Id.* at *2. After concluding the retainer agreement failed to comply with Cal. Bus. & Prof. Code § 6148, the statute governing non-contingency fee agreements, the court held that, by informing the attorney in the letter that "all subsequent legal services must be newly authorized," the trustee voided the agreement. *Id.* at *7.

These cases demonstrate that a client need not expressly state either his intention to void a fee agreement or the reasons therefor. This is again consistent with the purpose of the fee agreement statutes, which is to protect clients, not attorneys. In accordance with that purpose, the Court holds Hoiles effectively voided the contingency fee portion of the agreement as of January 21, 2004, the date of the letter from Hoiles to Alioto discussed above. Like the clients in *Alderman* and *Service Employees*, Hoiles instructed Alioto to take no further action as a lawyer on his behalf. Hoiles also

6

expressed his intention to pay Alioto under the hourly fee provision in the fee agreement; by doing so, he effectively denied any responsibility to pay **Alioto** a contingent fee.  Significantly, *Alderman* recognizes that a client need not void an entire agreement in order to exercise his or her rights under § 6147; rather, the client may void a particular provision when the agreement fails to comply with the statutory requirements.  *Alderman*, 205 Cal. App. 3d at 1038 ("Although the Hamiltons waived their right to void the entire contract by agreeing to pay the contingency fee relating to the will contest, the Hamiltons were free to and did exercise their absolute right to void the contract provision regarding the joint tenancy property.").  Thus, Hoiles's offer to pay Alioto under the hourly fee provision of the contract did not affect his ability to avoid the contingency fee provision.  Nor are Hoiles's subsequent statements that he still considered Alioto to be bound by the attorney-client relationship and to have obligations under the contract inconsistent with his refusal to pay Alioto a contingency fee under that contract.

Alioto also contends Hoiles's assertion that he voided the agreement on January 21, 2004 is inconsistent with his attempt to enforce the agreement by suing for breach of contract in his original complaint, filed on March 5, 2004.  However, Alioto fails to recognize that Hoiles's breach of contract claim was alleged as an alternative cause of action.  Compl. ¶ 20.  Hoiles's first claim was for a declaratory judgment that the agreement "was not properly executed" and that there was "no written contract for a contingent legal fee."  *Id.* ¶ 17(a).  He also brought a breach of fiduciary duty claim based in part on Alioto's "demanding an inappropriate and unlawful fee," as well as a fraud claim under which Hoiles sought "nullification and cancellation of the contingent

fee portion" of the agreement.  *Id.* ¶¶ 25, 39.  Although the complaint does not include a specific allegation that the fee agreement is void or unenforceable for failure to comply with applicable state law, California law does not require that degree of detail for a client to exercise his or her right to void a fee agreement, which again is consistent with the statute's purpose of protecting clients.

**II.     Alioto's Discovery Requests**

Alioto has requested documents "generated, prepared, reviewed, received or dated during the period January 1, 2001 to December 31, 2004."  Ex. 1 to Def.'s Mot., at 5.  He requests, among other things, documents regarding communications between Hoiles and his current and former counsel, as well as all documents prepared, reviewed, or maintained by Hoiles's current and former counsel, "concerning the Fee Contract, including but not limited to the Validity of the Fee Contract."  *Id.* at 5–6.

**A.     Scope**

As discussed above, ratification of the agreement must have occurred, if at all, prior to the date Hoiles voided the agreement.  Given my holding that Hoiles voided the fee agreement on January 21, 2004, Hoiles's knowledge regarding the voidability of the agreement after that date is immaterial to the narrow issue on which I have permitted additional discovery.  Thus, Hoiles need not produce documents "generated, prepared, reviewed, received or dated" after January 21, 2004.

Alioto's requests are also overly broad in that they request all documents "concerning the Fee Contract," which will include any number of documents that may be relevant to other issues in the case, but are immaterial to the ratification issue as I have

described it.  Based on applicable California law discussing ratification of voidable fee agreements, I hold that documents that do not at least generally relate to the enforceability of the fee agreement in question, such as the agreement's compliance with applicable state law or Hoiles's right to void it, are beyond the scope of the ratification issue and my prior Order, and are therefore not discoverable.

### B. Privilege Issues

The parties also dispute whether Hoiles may withhold as privileged communications between him and his attorneys that occurred prior to January 21, 2004 and are relevant to the ratification issue.  F.R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . .").  Alioto contends Hoiles waived any privileges that would otherwise attach by placing in issue Hoiles's lack of knowledge of the agreement's voidability.  Hoiles responds that it was Alioto who injected the issue of Hoiles's knowledge into this case, and no waiver of any privilege has occurred.

The Colorado Supreme Court has held that "by placing in issue a confidential communication going directly to [a] claim or defense, a party impliedly waives the attorney-client privilege with respect to that communication."  *Mountain States Tel. & Tel. Co. v. DiFede*, 780 P.2d 533, 543 (Colo. 1989).[3]  In *DiFede*, the plaintiff filed complaints seeking to set aside a transfer of real property and changes of beneficiary executed by her ex-husband, and the defendants asserted the claims were barred by a

---

[3] The parties agree Colorado law applies to privilege issues in this diversity case.  Pl.'s Resp. (doc. # 518) at 17 n.9 (citing *Frontier Ref., Inc. v. Groman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998)); Def.'s Reply (doc. # 520) at 14–15 (citing Colorado privilege law).

9

separation agreement the plaintiff had signed. *Id.* at 537–38. The plaintiff sought to rescind the agreement, contending she had been fraudulently induced to sign it because her then-husband's attorney, Raymond Wilder, had misled her about the enforceability of the agreement when she signed it. *Id.* at 538. The defendants responded that the plaintiff's reliance on the attorney's statements were unreasonable because she had met with another attorney, Jack Foutch, ten days after she signed the agreement, and Foutch "must have told her" the agreement was enforceable. *Id.*

Citing a state supreme court case from Nebraska, the Colorado Supreme Court noted an implied waiver of a privilege is appropriate when the following factors are present: "(1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Id.* at 543–44 (quoting *League v. Vanice*, 374 N.W.2d 849, 856 (Neb. 1985)). The court held the plaintiff had waived the attorney-client privilege with respect to the conversation she had with Foutch, explaining:

> When she alleged that she reasonable relied on Raymond Wilder's incorrect statement of the law, [plaintiff] injected her knowledge or lack of knowledge of the correct statement of the law as a crucial issue relevant to her claim of fraud-in-the-inducement. Only Jack Foutch and [plaintiff] know whether Jack Foutch disabused her of the incorrect notion that the separation agreement was not immediately enforceable. It would be unfair for [plaintiff] to thrust her lack of knowledge of the correct state of the law into the litigation by her claim of fraudulent inducement while simultaneously retaining the attorney-client privilege to frustrate attempts by [defendants] to prove [her] knowledge of the correct state of the law and thereby negate the very foundation necessary to prevail in Susan's claim of fraudulent inducement.

*Id.* at 544.  The court cited with approval the *League* decision, in which a minority shareholder (League) sued the corporation's president (Vanice) for breach of fiduciary duty.  374 N.W.2d at 851.  Vanice raised the affirmative defense that the four-year statute of limitations had run, and League asserted the statute had been tolled by Vanice's concealment of the transactions giving rise to the claims.  *Id.* at 852.  The issue was whether League's former attorney could be compelled to testify regarding whether he had advised League about the pertinent transactions more than four years before the claims were filed.  *Id.* at 856.  The Nebraska Supreme Court held:  "When he alleged concealment, League injected his knowledge, or lack of knowledge, into the litigation as a crucial issue relevant to disposition of [his] claims . . . ."  *Id.*

In this case, Hoiles asserted in his amended complaint in pertinent part that the fee agreement did not meet the standards required by applicable state law, the contingency portion of the agreement was not enforceable, and Alioto thus was not entitled to a contingent fee.  Am. Compl. (doc. # 94) ¶¶ 40–42.[4]  Alioto contends Hoiles ratified the agreement, which under *Fergus* necessarily includes an allegation that Hoiles had full knowledge of his right to void the agreement.  Like the defendants in *DiFede*, Alioto's argument essentially boils down to the contention that the lawyers who reviewed the fee agreement "must have told [him]" about the agreement's compliance (or lack thereof) with applicable law.  *DiFede*, 780 P.2d at 538.  Hoiles, however,

---

[4] Hoiles specifically asserted the agreement failed to comply with requirements under Colorado law; however, the Tenth Circuit subsequently held California law applied to the claims regarding the fee agreement.  *Hoiles v. Alioto*, 461 F.3d 1224, 1238 (10th Cir. 2006).

11

contends he received no legal advice regarding the fee agreement's compliance with California law.  See Def.'s S.J. Mot. on Issue of Ratification (doc. # 496) at 8–11.

Applying the reasoning of DiFede and League, I hold that, by claiming the agreement is unenforceable and asserting he was never advised about the fee agreement's compliance with applicable law, Hoiles has "injected his knowledge or lack of knowledge" of the agreement's enforceability into the case.  DiFede, 780 P.2d at 544.  Hoiles should not be permitted to assert the attorney-client privilege "to frustrate proof of knowledge [potentially] negating the very foundation or condition necessary to prevail" on his claims that the fee agreement is unenforceable and that Alioto is not entitled to a contingent fee.  League, 374 N.W.2d at 856.  That it is Alioto's burden to prove ratification is immaterial; in League, the plaintiff waived the attorney-client privilege even though the issue was whether the statute of limitations had run, which the defendant had the burden to prove.  Id. at 852.  Thus, Hoiles has waived the attorney-client privilege with respect to communications relevant to his knowledge of the agreement's validity under applicable law and his right to void the agreement.

However, this holding does not affect my prior rulings regarding the overly broad scope of Alioto's requests, as communications that have been held irrelevant to the ratification issue are not discoverable regardless of whether they are privileged.  Nor does it affect my ruling that the knowledge of Hoiles's attorneys regarding the validity of the agreement may not be imputed to Hoiles; thus, documents reflecting such knowledge are not discoverable absent an indication that they reflect communications to Hoiles on that subject.

    **C.**    **Responsive Documents Already Produced**

Hoiles requests an order that he "need not take any further action as to documents previously produced in this lawsuit." Def.'s Mot. at 10. However, because this Order substantially restricts the scope of permissible discovery, the burden on Hoiles of producing responsive documents, even those that have already been produced in this litigation, is not high. Thus, Hoiles is ordered to produce all documents that are (1) relevant to the ratification issue, as clarified in this Order, and (2) not privileged, based on my holding regarding Hoiles's waiver of applicable privileges.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion for Protective Order (doc. # 514) is GRANTED IN PART and DENIED IN PART in accordance with this Order. It is further ORDERED that Hoiles shall produce all discoverable, responsive documents to Alioto no later than **Wednesday, August 22, 2007**, and the parties shall endeavor to schedule Hoiles's deposition promptly after the documents are produced. As noted in my prior Order allowing additional discovery, Alioto shall have 20 days from the date discovery is completed to file a response to Defendant's Motion for Summary Judgment on Issue of Ratification (doc. # 496) and Motion for Separate Trials (doc. # 495), and Hoiles may file a reply within 10 days of the filing of the response.

DATED:  August 8th , 2007.

> BY THE COURT:
>
> *s/John L. Kane*
> John L. Kane, Senior Judge
> United States District Court