IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 04-cv-00438-JLK-MEH

JOSEPH M. ALIOTO,

    Plaintiff and Counterclaim Defendant,

v.

TIMOTHY C. HOILES,

    Defendant and Counterclaim Plaintiff.

## ORDER ON PLAINTIFF'S MOTION TO COMPEL

This matter is before the Court on Plaintiff Joseph M. Alioto's Motion to Compel Responses to Deposition Questions by Timothy Hoiles (doc. # 535), filed on October 9, 2007. Defendant Hoiles filed a response on October 11, 2007 (doc. # 536). The motion is ripe for disposition.

**I.    BACKGROUND**

Alioto took Hoiles's deposition pursuant to this Court's June 14, 2007 order (doc. # 508) permitting Alioto to conduct additional limited discovery "relevant to the ratification issue." Before Hoiles's deposition was taken, the Court issued an additional order (doc. # 524) clarifying the appropriate scope of such discovery. In that order, I held in pertinent part as follows: (1) to show Hoiles ratified the contingency fee agreement, Alioto must demonstrate Hoiles expressly or impliedly consented to the agreement with full knowledge of his right to void the agreement; (2) documents prepared or received and communications that occurred after Hoiles voided the

agreement are not relevant to the ratification issue; (3) Hoiles exercised his right to void the contingency fee agreement on January 21, 2004, the date of a letter from Hoiles to Alioto instructing him to take no further action as a lawyer on Hoiles's behalf and expressing his intention to pay Alioto under the alternative hourly fee provision of the fee agreement; (4) thus, Hoiles's knowledge regarding the voidability of the contingency fee agreement obtained after January 21, 2004, is immaterial to the ratification issue; (5) the scope of discovery is limited to requests that at least generally relate to the enforceability of the fee agreement in question, such as the agreement's compliance with applicable law or Hoiles's right to void it; and (6) Hoiles has waived the attorney-client privilege with respect to communications during the pertinent time frame relevant to his knowledge of the agreement's validity and his right to void the agreement.

During Hoiles's deposition, Hoiles's counsel instructed him not to answer a number of questions, mainly on the ground that the questions went beyond the scope of my prior order. *See generally* Hoiles depo., Ex. 1 to Pl.'s Mot. Alioto subsequently filed the motion to compel that is the subject of this order.

## II.     MOTION TO COMPEL

Alioto's motion groups the questions Hoiles refused to answer into several categories, and I will organize this order accordingly. For ease of reference, I will also number the disputed questions and issue a ruling as to each one.

### A.     Questions Concerning Legal Advice Hoiles Received Regarding the Validity of the Fee Agreement Prior to January 21, 2004

Hoiles was instructed not to answer the following questions because they purportedly were not limited to California law or were irrelevant to the ratification issue:

| NO. | PAGE:LINE | QUESTION |
|---|---|---|
| 1 | 28:4-6 | What did Mr. Johnson [Hoiles's attorney] and you [Hoiles] say to each other about the validity or enforceability of the contract up until January 21, 2004? |
| 2 | 30:6 | Tell me what was said in those conversations [between Hoiles and Mr. Johnson prior to January 21, 2004 about whether or not Hoiles should terminate the contract]. |
| 3 | 40:22 | Well, tell me what advice you had gotten [as of January 21, 2004 concerning Hoiles's rights under the agreement]. |
| 4 | 73:2-3 | And what did Mr. Johnson say about – if anything, about that instruction [in the January 21, 2004 letter to Alioto to take no further action as a lawyer on Hoiles's behalf]? |
| 5 | 86:5 | And why did you make that decision [that Hoiles no longer wanted Mr. Barletta to be dealing on Hoiles's behalf in connection with the subject of legal fees]? |

I find Hoiles was required to answer Question Nos. 1, 2, and 4, but was appropriately instructed not to answer Question Nos. 3 and 5. Question Nos. 1 and 2, although not specifically limited to advice Hoiles received about California law, are nevertheless relevant to the ratification issue. If Hoiles was given advice in general terms about the fee agreement's enforceability prior to January 21, 2004, such advice may shed light on his knowledge of that subject. Question No. 3 is overly broad and is similar to Alioto's requests for production of documents "concerning the Fee Contract" that I previously held are beyond the scope of permissible discovery. Question No. 4 relates to the January 21, 2004 letter, which is clearly relevant to the ratification issue. Question No. 5 does not relate to Hoiles's knowledge of the agreement's validity or whether he ratified it with such knowledge and need not be answered.

### B. Questions Concerning Hoiles's Knowledge About the Fee Agreement Before He Signed It in March 2002

Hoiles was instructed not to answer the following questions about legal advice he received from various attorneys prior to signing the fee agreement:

| NO. | PAGE:LINE | QUESTION |
|---|---|---|
| 6 | 10:8-10 | And Mr. Barletta also gave you advice concerning this fee contract before you signed it on March 1, 2002? |
| 7 | 12:12-14 | Did you ask Mr. Barletta for any advice concerning this agreement before you signed it? |
| 8 | 13:3 | What did you ask [Mr. Susemihl regarding advice about the fee contract before signing it in March 2002]? |
| 9 | 15:17-19 | At the time you signed the contract and sent it back to Mr. Alioto on March 1, 2002, did you believe you understood the contract? |
| 10 | 15:23-16:1 | At the time you signed the contract and sent it back to Mr. Alioto on March 1, 2002, did you believe it was a valid and enforceable contract? |
| 11 | 22:5-6 | Now, what – what did you ask him [Mr. Susemihl] that led him to make that statement [to Hoiles that "You have a contract"]? |
| 12 | 23:16-18 | And so since you didn't yet sign the contract, could you explain to me what he [Mr. Susemihl] meant, if you understood it yourself, when he said, "You have a contract"? |

Again, I have already held that questions or requests relating to legal advice Hoiles received about the fee agreement in general, unlimited to advice regarding its enforceability, are beyond the scope of the ratification issue and are not discoverable. Thus, Hoiles was correctly instructed not to answer Question Nos. 6, 7, 8, and 9. Question Nos. 10, 11, and 12, however, are relevant to Hoiles's knowledge with respect to the agreement's validity and should have been answered.

### C. Questions Relating to the Time Period After January 21, 2004

#### 1. *Hoiles's Credibility*

Alioto contends the following unanswered questions were "designed to test the credibility of Hoiles's testimony concerning the January 21, 2004 letter and his knowledge of his legal rights at the time he sent it" (Pl.'s Mot. at 9):

| NO. | PAGE:LINE | QUESTION |
|---|---|---|
| 13 | 45:16-2 | In your letter of February 9, [2004,] you wrote to Mr. Alioto, quote, I still consider you to be bound by our attorney-client relationship, unquote. Did you consider Mr. Alioto to be bound by the attorney-client relationship . . . as of February 9, 2004? |
| 14 | 46:5-8 | You go on in this [February 9, 2004] letter to state that you consider Mr. Alioto, quote, to have obligations under our contract, unquote. What contract were you referring to in that paragraph? |
| 15 | 46:14-15 | Were your statements in your February 9, 2004 letter true or false? |
| 16 | 46:19-23 | Isn't it a fact, Mr. Hoiles, that as of February 9, 2004, you believed you had a contract with Mr. Alioto that was in force, and by this letter you were intending to let him know that? |
| 17 | 43:24 | Did you both [Hoiles and his attorney, Mr. Johnson] participate in [drafting] the entire [February 9, 2004] letter? |
| 18 | 47:15-16 | Is the first – is Joint Exhibit 1818 a letter that you sent to Mr. Alioto on February 20, 2004? |
| 19 | 50:19-23 | Could you explain to me how you could have intended to terminate Mr. Alioto's contract on January 21, 2004, and nonetheless have written on February 20, 2004, that you, quote, have not terminated Joe Alioto, unquote? |
| 20 | 51:7-8 | Is the sentence I read in Joint Exhibit 1818 [quoted in Question No. 19 above] true or false? |
| 21 | 128:3-5 | Did there come a time after February 20, 2004, where you did terminate Joe Alioto or he resigned as your lawyer? |
| 22 | 20:13-14 | What happened in June of '04 to give you a tremendous amount of doubt [about the validity or enforceability of the fee contract]? |

| 23 | 16:6-9 | Mr. Hoiles, did you ever form the belief that your fee contract with Mr. Alioto, the one you signed and returned to him on March 1, 2002, was invalid or unenforceable? |

Hoiles asserts the above questions go beyond the scope of permissible discovery given my prior holdings that, under California law, Hoiles terminated the contingency fee portion of the agreement on January 21, 2004 and thus questions relating to documents prepared or communications occurring after that date are irrelevant to the ratification issue.  However, because the January 21st letter is clearly relevant, Alioto should be permitted to cross-examine Hoiles about the statements contained in that letter, even if it involves asking questions about documents prepared after that date.  Thus, Hoiles is required to answer Question Nos. 13–20, which were all asked in the context of attempting to impeach Hoiles's testimony regarding the content of the January 21st letter.  Question Nos. 21 and 22, however, were not asked in that context and thus go beyond the scope of the Court's prior order.  Question No. 23, while somewhat open-ended, is clearly related to the issue of when Hoiles learned that the contingency fee agreement was unenforceable and thus should have been answered.

### 2. *Filing of the Original Complaint on March 5, 2004*

Alioto seeks to compel answers to the following questions about Hoiles's decision to file the original complaint in this lawsuit on March 5, 2004:

| NO. | PAGE:LINE | QUESTION |
|---|---|---|
| 24 | 122:20-21 | And why did you decide to sue on March 5, 2004? |
| 25 | 124:9-10 | What was your purpose in filing this complaint? |

| 26 | 124:15-19 | Would you look at paragraph 46 of the complaint, Mr. Hoiles, please. You there allege that Mr. Alioto cannot establish a causal connection between the services he provided and the sale of your stock. Do you see that? |
|---|---|---|
| 27 | 125:7-9 | When did you first come to believe that the facts alleged in paragraph 46 were correct? |
| 28 | 125:16-18 | Did you come to believe, at any time up to January 21, 2004, that the facts alleged in paragraph 46 of the complaint are true? |
| 29 | 123:23-24 | [W]as that allegation [in paragraph 10 of the original complaint that Hoiles had rejected the recommendation of a settlement made by Alioto] true at the time you made it? |
| 30 | 124:3-5 | When – when did you reject the recommendation of settlement as you allege in paragraph 10? |
| 31 | 123:9-11 | Do you know why Mr. Susemihl was able to sign this complaint after having concluded that you have a contract with Mr. Alioto? |
| 32 | 33:12-14 | Did [Mr. Susemihl] ever tell you that the contract was invalid or unenforceable or that you didn't have a contract? |

Alioto contends these questions are appropriate "[b]ecause the March 5, 2004 complaint is premised, in substantial part, on a theory that Alioto breached the Fee Contract." Pl.'s Mot. at 12. I disagree. As noted in my prior order, the breach of contract claim was alleged as an alternative cause of action in the original complaint, and Hoiles asserted in other claims that the demanded contingency fee was unlawful and that the contingent fee portion of the contract was subject to "nullification and cancellation." Prot. Order at 7–8. Asserting an alternative breach of contract claim, particularly at the outset of litigation, is not inconsistent with a claim that the contract is unenforceable and does not open the door for questioning on that claim, which is irrelevant to the ratification issue at hand. Thus, Hoiles was correctly instructed not to answer Question Nos. 24–31. Question No. 32, however, should be answered for the

same reason Hoiles is required to answer Question No. 23—it is clearly relevant to the issue of when Hoiles learned that the contingency fee agreement was unenforceable.

### 3. *Questions Involving Hoiles's Intent to Utilize Alioto's Services as an Attorney After January 21, 2004*

Hoiles's counsel instructed him not to answer the following questions involving whether Hoiles avoided terminating Alioto on January 21, 2004 "because he might have further need for his services" after that date (Pl.'s Mot. at 13):

| NO. | PAGE:LINE | QUESTION |
|---|---|---|
| 33 | 79:22-80:1 | On January 21, 2004, when you instructed Mr. Alioto to take no further action as your lawyer, did any further legal work remain to be done by Mr. Alioto or his team in order to secure your payment for your shares in Freedom? |
| 34 | 111:21-25 | Were you concerned, even after the shareholders' vote in December of 2003, that something might happen that might require that you would need additional legal services in order to get paid for your shares? |
| 35 | 112:4-8 | Didn't you want Mr. Alioto to continue as your attorney so that he would be available to you in case it should turn out that any additional legal work needed to be done on your behalf even after January 21, 2004? |
| 36 | 111:13-17 | Was there a time, Mr. Hoiles, when you concluded that whatever had to happen in order for you to get paid $212.71 a share for your shares, that it had happened, and the payment was assured? |
| 37 | 110:5-11 | In about a little before the middle of the article [published in a business journal on December 8, 2003], it's written, quote, But Hoiles, to keep the pressure on, is repeating his threat to file a novel antitrust claim if plans go awry, unquote. . . .  Was that true? |
| 38 | 110:15-19 | Well, Mr. Hoiles, there were times, taking the whole sweep of this case from August of '01 through May of '04, there were times, were there not, when you threatened that you would have Mr. Alioto bring a novel antitrust case, right? |
| 39 | 111:4-7 | Did there ever come a time, Mr. Hoiles, when you decided that you no longer needed to have the threat of an antitrust claim brought by Mr. Alioto out there? |

| 40 | 118:25-119:3 | [Joint Exhibit 1833] appears to be a fax from Christopher Shaw and Joe Barletta, dated February 27, 2004.  My question, Mr. Hoiles, is, first, whether you saw this document at or about February 27, 2004? |
|----|--------------|---|
| 41 | 119:11-21 | And item 2 of the fax on the first page, among other things, there is a reference to, quote, a problem securing Threshie and Wallace signature on stock reissue, period, unquote. . . .  Did you understand that about this time in late February 2004, that there was still a potential for Mr. Threshie to cause problems that would possibly undo the deal the shareholders had voted in favor of in December of 2003? |
| 42 | 120:1-5 | On the last page of this document, in the last line, Mr. Shaw says that ". . . Alan Bell is genuinely producing negative vibes on the deal . . ."  Were you aware of that in late February of 2004? |
| 43 | 120:9-13 | Isn't it a fact, Mr. Hoiles, that in late February 2004, you still had concerns about whether the deal that the shareholders had voted in favor of would close, and that you might need legal representation to deal with those issues? |
| 44 | 121:5 | Was [the January 13, 2004 Freedom board meeting] an important board meeting? |
| 45 | 121:14-15 | Assuming you did [send the agenda for the board meeting to Mr. Alioto], why did you do that? |

I will require Hoiles to answer these questions, as they are relevant to Hoiles's credibility with respect to his testimony about the January 21, 2004 letter.

### D.     Additional "Miscellaneous" Questions

Hoiles was instructed not to answer the following questions related to "calculations of contingency fees due under the Fee Contract," "Hoiles's negotiations with Alioto over the fees owed," and "Hoiles's negotiations with his ex-wife and daughters over the fees that they owed" (Pl.'s Mot. at 15–16):

| NO. | PAGE:LINE | QUESTION |
|-----|-----------|----------|
| 46 | 57:11-12 | And what – prior to your sending this fax to Mr. Barletta [in November 2003], what had he said to you on that subject [of the possible fee that might be owing to Mr. Alioto]? |

| | | |
|---|---|---|
| 47 | 62:7-11, 15 | [O]n November 25, 2003, you faxed to Mr. Barletta both a copy of your agreement with Mr. Alioto and calculations of a possible legal fee owing to Mr. Alioto that had been made by your accountant . . . . [A]nd my question is, why did you do that? |
| 48 | 62:19-22 | Did you want Mr. Barletta to work with you in determining whether or not you were required to pay fees of the magnitude calculated by your accountant? |
| 49 | 73:18-19 | And at that time [when Hoiles sent the January 21, 2004 letter], you were willing to make a payment to Mr. Alioto on that basis [of $1,000 per hour for Mr. Alioto's time and $500 per hour for the time of Dan Shulman and Bob Stratmore]? |
| 50 | 77:7-10 | And so do I correctly understand that you were asking your daughters and your ex-wife, in this letter of December 11, 2003, to pay a fee that you considered unreasonable? |
| 51 | 80:12-13 | Did you have any such discussions [with Hoiles's ex-wife and daughters about whether any legal fees were or would be due and owing with respect to their shares] after you sent [the December 11, 2003] letter? |
| 52 | 83:18-21 | So you had no objection to the portions of the [December 30, 2003] Barletta letter [to Alioto], the portion that begins "First," and the portion that begins, "The second issue"? |
| 53 | 84:17-25 | On the second page of Mr. Barletta's December 30, 2003 letter to Mr. Alioto, in the third paragraph there's a – there is a sentence that says that if you, Mr. Hoiles, recover cash for your shares, you will owe Mr. Alioto something north of $16 million. . . . At this time, December 30, 2003, did you agree with that? |
| 54 | 85:4-6 | Was there ever a time before January 21, 2004, when you disagreed with [the above-quoted] sentence? |
| 55 | 86:10-12 | Had Mr. Barletta given you any advice concerning your obligations under your contract with Mr. Alioto that you were unhappy with? |
| 56 | 90:14-15 | Do you have any information at all about why this document [calculation prepared by Charles Lane on December 22, 2003 of the fee that would be owing to Mr. Alioto under various alternative assumptions] was generated? |
| 57 | 117:17-19, 118:1-2, 118:9-13 | The typed portion of the draft [of Joint Exhibit 1748 that also contains handwritten changes reflecting edits by Mr. Barletta], was that your draft? |

Hoiles contends that any contingency fee calculations are beyond the scope of permissible discovery and are irrelevant because the fee agreement has already been held to be invalid. However, such questions are relevant to Hoiles's knowledge and belief with respect to the validity of the contingent fee portion of the agreement prior to January 21, 2004. Thus, they are potentially relevant to the ratification issue and should be answered.

Hoiles was also instructed not to answer the following questions regarding "Hoiles's knowledge of the choice of law governing the Fee Contract" (Pl.'s Mot. at 18):

| NO. | PAGE:LINE | QUESTION |
|---|---|---|
| 58 | 26:10-12 | And had you been advised by this point in time [in August 2004] that the contract could have or should have included a provision concerning choice of law? |
| 59 | 106:19-21 | And you didn't think you needed a Colorado attorney in connection with your disagreements with Mr. Alioto at that time [from late November 2003 through January 21, 2004]? |
| 60 | 115:1 | [Referring to the quote, "Thank God we are in Colorado today," from Hoiles's testimony in the original trial in this case:] Why did you say that? |
| 61 | 115:4-7 | Does [the above quote] reflect advice that you got about California law concerning your contract with Mr. Alioto? |

I agree with Hoiles that his knowledge regarding the lack of a choice-of-law provision in the agreement and his testimony reflecting his opinion at the time of the original trial in this case are not relevant to the ratification issue. These questions are not generally related to Hoiles's knowledge of the enforceability of the fee agreement, his termination of the agreement, or his potential ratification of the agreement. Thus, Hoiles is not required to answer Question Nos. 58–61.

### E.    Assertions of Attorney-Client Privilege

Finally, Alioto seeks to compel Hoiles to answer the following questions, which he was instructed not to answer on privilege grounds:[1]

| NO. | PAGE:LINE | QUESTION |
|---|---|---|
| 62 | 93:1 | Did he [Mr. Johnson] ever change that advice [regarding what state's law applied to the fee agreement and whether the contract was valid]? |
| 63 | 108:17-20 | Tell me what was said between you and Mr. Johnson when you had a conversation about Mr. Susemihl saying, "You have a contract." |
| 64 | 108:23-25 | Did Mr. Susemihl ever tell you that he changed his mind [regarding his statement to Hoiles that "You have a contract"]? |

With regard to Question No. 62, as Hoiles points out the deposition transcript reflects that, although Hoiles's counsel initially objected to the question on privilege grounds, Hoiles went on to answer it and need not do so again. *See* Hoiles depo. at 94–95.  Question No. 64 was also answered to the extent it was limited to the time period before January 21, 2004, and Hoiles is not required to answer with respect to the post-January 21, 2004 time period.  Question No. 63 arguably relates to Hoiles's knowledge about the validity of the fee agreement before it was terminated and should be answered.

### III.   CONCLUSION

For the foregoing reasons, plaintiff's Motion to Compel (doc. # 535) is GRANTED IN PART and DENIED IN PART as follows: The motion is granted with

---

[1] I have omitted discussion in this section of the questions asked on page 30, line 6, page 40, line 22, and page 115, lines 4-7, as those questions have already been addressed in this order.

respect to Question Nos. 1, 2, 4, 10–20, 23, 32–57, and 63, which Hoiles is required to answer. The motion is denied with respect to the remaining questions. The parties shall schedule one final deposition of Hoiles to effectuate this order. With these rulings, I expect no further complications in the taking of Hoiles's deposition and, if any further instructions not to answer are objected to, the deposition will continue in open court. In accordance with my order of September 19, 2007 (doc. # 534), Alioto's response to defendant's motion for summary judgment (doc. # 496) and motion for separate trials (doc. # 495) is due 20 days from the date on which Hoiles's deposition is completed, and Hoiles may file a reply within 10 days of the filing of the response.

DATED: October 19, 2007

BY THE COURT:

*s/ John L. Kane*

_____
John L. Kane
United States Senior District Judge