**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 04-cv-00438-CMA-MEH

JOSEPH M. ALIOTO,

      Plaintiff/Counterclaim Defendant,

v.

TIMOTHY C. HOILES,

      Defendant/Counterclaimant.

---

## ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF HOILES

---

This case involves an attempt by a California-licensed attorney to enforce a contingency fee agreement against his Colorado resident client or, alternatively, to recover his attorneys' fees on the basis of the equitable theory of *quantum meruit*.

## I.  BACKGROUND

**A.    Facts[1]**

---

[1]   Unless noted, all facts are taken from Doc. # 290, Stipulated Facts or *Hoiles v. Alioto*, 461 F.3d 1224, 1228-29 (10th Cir. 2008).  An exhaustive statement of facts can be gleaned from the many decisions in this case: *see Hoiles v. Alioto*, No. 07-1533, 341 Fed. Appx. 433, 2009 U.S. App. LEXIS 18086 (10th Cir. Aug. 13, 2009) (unpublished); *Alioto v. Hoiles*, No. 04-cv-00438-JLK-MEH, 2007 U.S. Dist. LEXIS 93915 (D. Colo. Dec. 21, 2007) (unpublished), *rev'd*, 341 Fed. Appx. 433, 2009 U.S. App. LEXIS 18086 (10th Cir. 2009); *Alioto v. Hoiles*, No. 04-cv-00438-JLK-MEH, 2007 U.S. Dist. LEXIS 93598 (D. Colo. Dec. 20, 2007) (unpublished); *Alioto v. Hoiles*, No. 04-cv-00438-JLK-MEH, 2007 U.S. Dist. LEXIS 79568 (D. Colo. Oct. 19, 2007) (unpublished); *Alioto v. Hoiles*, No. 04-cv-00438-JLK-MEH, 2007 U.S. Dist. LEXIS 67849 (D. Colo. Sept. 6, 2007) (unpublished); *Alioto v. Hoiles*, No. 04-cv-00438-JLK-MEH, 2007 U.S. Dist. LEXIS 57893 (D. Colo. Aug. 8, 2007) (unpublished); *Alioto v. Hoiles*, No. 04-cv-00438-JLK-MEH, 2007 U.S. Dist. LEXIS 57465 (D. Colo. Aug. 7, 2007) (unpublished); *Alioto v. Hoiles*, No. 04-cv-00438-JLK-MEH, 2007 U.S. Dist. LEXIS 48557 (D. Colo. July 5, 2007) (unpublished).

TIMOTHY C. HOILES ("Hoiles")[2] owned 511,221 shares of stock in a closely-held media corporation, Freedom Communication, Inc. ("Freedom Communication"). Independent of Hoiles, Hoiles' ex-wife owned 56,907 shares, and Hoiles' two adult daughters each owned 49,616.75 shares, of Freedom Communication stock. The remainder of Freedom Communication shares were held by the other descendants of Hoiles' grandfather. In the 1980s, Hoiles' father expended approximately $6 million in an unsuccessful attempt to obtain a fair price for his Freedom Communication shares and/or to dissolve Freedom Communication. *Hoiles*, 341 Fed. Appx. at 435. Because of his father's experience and because he anticipated difficulties obtaining a fair price for his shares, Hoiles asked his business consultant and attorney, Joseph Barletta ("Barletta"), to locate an attorney willing to work on a contingency fee basis to assist Hoiles in obtaining a fair price for his shares. On August 4, 2001, Hoiles and Barletta traveled to California to meet with California attorney JOSEPH M. ALIOTO ("Alioto") to discuss how Hoiles should proceed in order to obtain a fair price for Hoiles' shares.

In order to memorialize the terms under which he would represent Hoiles, on August 17, 2001, Alioto sent Hoiles a letter proposing the following terms for a contingent fee agreement ("Contingency Fee Agreement"):

Dear Tim,

This letter sets forth the bases upon which my firm will represent **you** in the Freedom Communications matter.

---

[2]   Because the parties have been realigned in this case, for purposes of clarity, the Court will refer to the parties by their sur-names, as opposed to their designations as plaintiff or defendant. *See Alioto*, 2007 U.S. Dist. LEXIS 93915, at *3 n.1.

1. A $500,000 non-deductible non-refundable retainer, which has already been paid.

2. Fifteen percent (15%) of anything recovered before the filing of a complaint; 20% of anything recovered after the filing of a complaint but before the commencement of the trial; and 25% of anything recovered after the commencement of the trial. (As I said at our meeting, these percentages are lower than my customary charges because some of the recovery will necessarily include ownership that *you* already have.)

3. The reimbursement of out-of-pocket expenses, which include such items as transcripts, depositions, first-class travel and accommodation, photocopying, telephone, Westlaw time, etc. In connection with these costs, *you* have already advanced $100,000 which will be deposited in a cost fund account for *your* benefit, and which will be used to finance the costs as they are incurred. We shall send *you* a monthly statement of the costs drawn from the account. *You* agree to maintain this cost fund at a level of $50,000. At the conclusion of the case, anything remaining in the cost fund will, of course, be returned to *you*.

4. I shall be allowed to hire counsel to assist me in the prosecution of the case. Any additional counsel will not increase the amount of *your* fee, however, costs may be proportionately greater.

5. If *you* withdraw from or dismiss the case against my recommendation, *you* will pay a reasonable attorney fee based upon $1,000 an hour for my time and $500 an hour for the time of my co-counsel.

6. The retainer, expert fees and costs used in the prosecution of the case will not be deducted from any recovery before the application of the contingency in Paragraph 2.

7. Any expert hired in this case will be paid directly by *you*. However, I will choose the expert and negotiate a fee on *your* behalf.

8. *You* have the sole authority to settle the case on *your* behalf. However, *you* will not unreasonably withhold your consent to settle the case on my recommendation. If *you* unreasonably withhold *your* consent to settle the case for an amount I believe to

be reasonable in all of the circumstances, I shall be allowed to withdraw from the case and be paid in accordance with Paragraph 5. I am obliged to state that this agreement is by negotiation and not otherwise set or established by law, and that I am self-insured. If **you** agree to the terms of this retainer, please sign in the lower left-hand space provided for **your** signature, retain a copy of this agreement for **your** files, and return the original to me.  It will be an honor and privilege to represent **you** in this important litigation.[3]

The language of the Contingency Fee Agreement clearly states (and neither party disputes) that the parties agreed that Alioto's firm would represent Hoiles and Hoiles would compensate Alioto's firm for that representation by paying Alioto's firm a contingency fee percentage (15%, 20%, or 25%, depending on whether a complaint was filed or trial commenced).   The Contingent Fee Agreement was not addressed to, was not sent to, and did not request the signatures of Hoiles' ex-wife and adult daughters.

The dispute between Alioto and Hoiles in this case arises because the Contingency Fee Agreement does not state to what property the contingency fee percentage attached.  In addition, the Contingency Fee Agreement did not contain a statement as to what extent the client could be required to pay any compensation to Alioto for related matters.[4]  Hoiles paid Alioto $500,000.00 on August 8, 2001, as a "non-deductible, non-refundable retainer" and signed the Contingency Fee Agreement in Colorado, approximately 6 months after the initial meeting.

---

[3]   Doc. # 569, Alioto's Brief on the Legal Issues Identified by the Court ("Alioto's Br."), Ex. 14, the Contingency Fee Agreement (emphasis added).

[4]   *See id.  See also Hoiles*, 341 Fed. Appx. at 438; CAL. BUS. & PROF. CODE § 6147(a)(3) (2000).

4

As part of his representation of Hoiles, Alioto intended to threaten litigation against Freedom Communication and, in preparation therefor, Alioto prepared an antitrust complaint based on California law. Hoiles concedes that this antitrust complaint was part of a strategy that "might bring people to the table to deal with [Hoiles] at a fair market price."[5] Hoiles also agreed in his trial testimony that he "used [the threat of filing the complaint drafted by Alioto] right to the end . . . right to the very end."[6] Approximately two years after the initial meeting between Hoiles and Alioto, in December 2003, Freedom Communication entered into a recapitalization agreement with Blackstone/Providence Merger Corp. The extent to which this recapitalization resulted from any actions taken on the part of Alioto is disputed. As a result of the recapitalization, all Freedom Communication shareholders were able to exchange their shares for cash or shares in the newly-formed corporation. Hoiles, his ex-wife, and his two adult daughters all elected the cash option and received $212.71 per share, *i.e.*, Hoiles received $108,741,818.91, Hoiles' ex-wife received $12,104,687.97, and Hoiles' daughters each received $10,553,978.89, for a total of $141,954,464.66.

On December 11, 2003, Hoiles drafted a letter to his ex-wife and adult daughters, seeking their contribution for Alioto's attorney's fees.[7] In his draft of the letter, Hoiles states that he is "also sending a letter to Pam and Penny [other Freedom Communication shareholders] and their families soliciting their help for the payment of

---

[5]  Alioto's Br., Ex. 7, "Hoiles' Trial Testimony" at p. 387, ll. 2, 13-16.

[6]  *Id.* at p. 387, l.13-p. 388, l. 5.

[7]  Alioto's Br., Ex. 47; Alioto's Br., Ex. 65, Deposition of Timothy C. Hoiles, 11/15/2007, Volume II ("Hoiles' Dep. II") at pp. 234-37.

expenses. I truly [sic] believe that if we obtain a positive result it is in fact due to the work of Joe Barletta, Mr. Alioto and the team . . . he assembled."[8] After consulting with Barletta, Hoiles edited the letter, and changed the names of those whose work contributed to the potential positive result: "Joe Barletta, Mr. Alioto, and the team . . . he assembled and Christopher Shaw."[9] The letter, as it was sent out on December 11, 2003, still requested contribution from Hoiles' ex-wife and daughters; and, still stated that he also was seeking contribution from other family members, Pam and Penny.[10] Attached to the letters Hoiles sent to his ex-wife and adult daughters was a chart containing a breakdown of the number of shares each recipient owned; the amount they would receive as a sale price for the shares; and, the amount Hoiles considered to be their share of the attorney's fees (computed at 15% of the "sale price").[11] The notes at the bottom of the charts include the following: "The per share cost basis varies between individuals and entities. For purposes of this report, the cost basis for total shares in the Tim Hoiles Branch (667,361.5) has been allocated evenly based on the shares owned by each Tim, Gail, Jill & Elizabeth." A facsimile sent to Alioto from Barletta and dated December 11, 2003, discussed "the problem with Betsy [Hoiles' ex-wife]" and included

---

[8]  Alioto's Br., Ex. 47; Alioto's Br., Ex. 65, Hoiles' Dep. II, at pp. 234-37.

[9]  Alioto's Br., Ex. 15; Alioto's Br., Ex. 65, Hoiles' Dep. II, at pp. 236-37.

[10]  *See* Alioto's Br., Ex. 15, Ex. 16.

[11]  Alioto's Br., Ex. 15, Ex. 16.

the statement that "[Hoiles] is very grateful for your understanding . . . ; he's trying to negotiate with Betsy [Hoiles' ex-wife] on your fees."[12]

Although Alioto never filed the antitrust complaint,[13] on January 8, 2004, approximately three weeks after Freedom Communication shareholders approved the recapitalization, Alioto wrote a letter demanding that Hoiles pay him a $28.4 million contingent fee, representing 20% of the funds to be received by Hoiles, Hoiles' ex-wife and Hoiles' two adult daughters.[14]

In January 2004, Hoiles retained attorney E. Glen Johnson ("Johnson") to advise him with respect to Hoiles' obligations to Alioto.[15] On January 21, 2004, Hoiles sent a letter to Alioto which included the following: "I am instructing you to take no further actions as a lawyer on my behalf . . . . In order to prepare for any possible resolution of your fee claims, submit a billing statement for your legal services at $1000 an hour for your time, and for Dan Shulman and Bob Stratmore at $500 per hour . . . . My counsel for these matters is now Mr. E. Glen Johnson."[16] Subsequently, on February 9, 2004, Hoiles advised Alioto that he "still consider[s] [Alioto] to be bound by [their] attorney-client relationship and to have obligations under [their] contract, so I want to be clear, all

---

[12] Alioto's Br., Ex. 38.

[13] The Contingency Fee Agreement provided for a contingent fee of 15% "of anything recovered before the filing of a complaint; [and] 20% of anything recovered after the filing of a complaint."

[14] Doc. # 566, Appendix to Doc. # 565, Hoiles' Brief Regarding the Legal Issues Identified by The Court ("Hoiles' Br."), Ex. 2, A.28-29.) ("There is no question about the 20%. Neither is there any question that we have and are representing 667,000 shares").

[15] Alioto's Br., Ex. 20, Dep. of Timothy C. Hoiles, 09/12/2007 ("Hoiles' Dep."), at pp. 37-40.

[16] *Id.* at p. 37; Alioto's Br., Ex. 42.

of these instructions are from me as your client.  The request that you provide no further legal services at this time, still stands, however."[17]  On approximately February 20, 2004, Hoiles also communicated to the other attorneys working with Alioto, *i.e.*, Messrs. Shulman, Stratmore and Schartz, that he had "not terminated Joe Alioto nor has he resigned as my lawyer."[18]

**B.    Procedural History[19]**

On March 5, 2004, Hoiles filed suit in Colorado state court seeking, *inter alia*, a declaration that Alioto was not entitled to a contingent fee.  Alioto removed the case to the U.S. District Court for the District of Colorado based on diversity; and, filed his own suit against Hoiles, Hoiles' ex-wife and Hoiles' two adult daughters in California state court for breach of contract, unjust enrichment (*quantum meruit*), fraud, and negligent misrepresentation.  Hoiles removed Alioto's cause of action under California state law to a U.S. District Court in California.  The U.S. District Court in Colorado denied Alioto's motion to dismiss for lack of personal jurisdiction; and, the U.S. District Court in California transferred Alioto's suit to Colorado.  The two cases were consolidated in the U.S. District Court for the District of Colorado ("Colorado Law Suit").  Despite the fact that Alioto's claims in the California state law action were removed from state court and transferred to the U.S. District Court for the District of Colorado, Alioto subsequently filed and asserted, in the Colorado Law Suit, identical counterclaims against Hoiles,

---

[17]  Alioto's Br., Ex. 43.

[18]  Alioto's Br., Ex. 44.

[19]  Unless otherwise stated, the following procedural history is taken from the parties' Stipulated Facts or *Hoiles*, 461 F.3d at 1229, 1234, 1237-38.

Hoiles' ex-wife, and Hoiles' two adult daughters. Alioto's counterclaims against Hoiles' ex-wife and two daughters were dismissed with prejudice and Alioto failed to preserve the dismissal for appeal. Applying Colorado conflict of law rules, the U.S. District Court for the District of Colorado concluded that Colorado law applied to all claims and issues in the case. Concluding that the Contingency Fee Agreement did not comply with Colorado's rules regarding contingent fee agreements, the Court dismissed Alioto's claims based on breach of contract, fraud, and misrepresentation.[20] The case proceeded to trial solely on Alioto's equitable claim of *quantum meruit* against Hoiles. At trial, the jury was instructed as follows:

1.  in calculating a reasonable *quantum meruit* award, it could not consider whether the fee was fixed or contingent nor could it consider the contingent fee percentage contained in the Contingency Fee Agreement or any other percentage;

2.  the fee award must be limited to work performed by Alioto himself, and could not include recovery for work performed by Alioto's co-counsel;

3.  Alioto "has the burden of proving the following essential elements by a preponderance of the evidence; one, plaintiff Hoiles received a benefit. Two, at defendant Alioto's expense or effort. Three, under circumstances that would make it unjust for plaintiff Hoiles to retain the benefit without paying defendant Alioto";[21]

4.  Hoiles "also claims he's entitled to a return of some or all of the $500,000.00 retainer fee he paid to defendant Alioto for legal services. Defendant Alioto denies the plaintiff Hoiles is entitled to a return of any portion of the retainer fee. These are the issues you are to decide."[22]

---

[20]  *Id.*; Stipulated Facts at ¶ 19. *See also* COLO. R. GOVERNING CONTINGENT FEES ch. 23.3.

[21]  Doc. #571, Appendix to Doc. #570, Response to Motion for Summary Judgment and Brief on the Legal Issues Identified by the Court ("Hoiles' Response"), Attach. #2, p. S.A.48, ll. 11-18.

[22]  *Id.* at p. S.A.47, ll. 14-20.

The sole question in the Jury Verdict Form was: "Do you find, by a preponderance of the evidence, both of the following: (1) that defendant Alioto, by his efforts, conferred a benefit on plaintiff Hoiles and (2) the benefit was conferred under circumstances that would make it unjust for plaintiff Hoiles to retain the benefit without payment."[23] If the jury answered the question in the affirmative, they were then to "state the amount of reasonable fees in dollars."[24] In making a determination of the reasonable value of the services provided by Alioto, the jury was instructed that it could consider the following factors, among others:

(1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal services properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer performing the services.[25]

The jury returned a verdict in favor of Alioto for $1,150,000, which the District Court reduced by the $500,000 retainer paid by Hoiles to Alioto. Alioto appealed.

---

[23] *Id.* at p. S.A.58; p. S.A.54, ll. 17-22.

[24] *Id.* at pp. S.A.54-55.

[25] *Id.* at pp. S.A.51-52, 56-57.

On appeal, the Tenth Circuit, concluding that California law governed the validity of the Contingency Fee Agreement,[26] reversed and remanded the matter to the trial court with instructions that the trial court determine whether the Contingency Fee Agreement is enforceable under California law. The Tenth Circuit also reversed the trial court's dismissal of Alioto's claims for fraud and negligent misrepresentation.

On May 29, 2007, on remand from the Tenth Circuit, the trial court concluded that the Contingency Fee Agreement did not comply with CAL. BUS. & PROF. CODE § 6147 ("§ 6147"); and, hence, was "voidable at the option of the client" because "[u]nder the plain language of this provision, some sort of statement about related matters is required, even if it is a statement that there are *no* related matters not covered by the agreement for which the client could be required to pay compensation." *Alioto*, 488 F.Supp.2d at 1150, 1151-52, 1153-54. On August 8, 2007, in a separate order, the trial court further concluded that, on January 21, 2004, Hoiles effectively voided the Contingency Fee Agreement.[27] On December 21, 2007, in response to Alioto's argument that Hoiles had ratified the Contingency Fee Agreement, the trial court concluded that, prior to January 21, 2004, Hoiles did not possess the requisite knowledge a client must have in order to ratify a contingency fee agreement that does

---

[26]   Although the U.S. Court of Appeals for the Tenth Circuit concluded that California law applied to the interpretation of the Contingency Fee Agreement, it declined to address whether Colorado or California law applies to Alioto's *quantum meruit* claim because the parties had not sufficiently briefed the issue on appeal. The Tenth Circuit further directed that if necessary, on remand, the district court should address this issue in light of its choice of law determination regarding the validity of the Fee Agreement. *Hoiles*, 461 F.3d at 1238, n.9.

[27]   *Alioto*, 2007 U.S. Dist. LEXIS 57893, at *11; *Alioto*, 2007 U.S. Dist. LEXIS 93915 at *5, *6, *14.

not comply with § 6147. *Alioto*, 2007 U.S. Dist. LEXIS 93915 at *14, *16, *19. The trial

court therefore granted Hoiles' Motion for Summary Judgment as to the ratification

issue. *Id.* at *20. Alioto appealed. *Hoiles*, 341 Fed. Appx. at 438; 2009 U.S. App.

LEXIS 18086 at *12-*13.

The Tenth Circuit reviewed *de novo* the trial court's interpretation of § 6147.

Utilizing general principles of statutory construction,[28] the Tenth Circuit concluded that,

contrary to the conclusion of the trial court, § 6147(a)(3) requires no related matters

statement if there are no related matters."[29] The Tenth Circuit again reversed the trial

court and remanded the case to the trial court for further proceedings.[30] *Hoiles*, 341

Fed. Appx. at 442; 2009 U.S. App. LEXIS 18086 at *26. However, the Tenth Circuit

also concluded that, "if there is no statement of related matters, indicating there are

none, and an attorney seeks additional fees for performing services for 'related matters

that arise out of their relationship not covered by their contingency fee contract' he does

so at his peril. He runs the risk of invalidating the entire contingent fee agreement, not

merely forfeiting his right to an additional fee."[31] The Tenth Circuit also stated that if

---

[28]  *Hoiles*, 341 Fed. Appx. at 439; 15; *see also* CAL. BUS. & PROF. CODE § 6147.

[29]  *Hoiles*, 341 Fed. Appx. at 441; *see also* CAL. BUS. & PROF. CODE § 6147(a)(3).

[30]  The U.S. Court of Appeals for the Tenth Circuit issued a narrow decision regarding the requirement of a related matters statement under Cal. Bus. & Prof. Code § 6147(a)(3); and, stated that "[t]he detailed issues, as well as these other [issues], are best addressed by the district court in the first instance." *Hoiles*, 341 Fed. Appx. at 441, 442.

[31]  *Hoiles*, 341 Fed. Appx. at 441 (discussing *Tishgart v. DeJesus*, No. A104244, 2004 Cal. App. Unpub. LEXIS 8071, 2004 WL 1941193 at *3 (Cal. Ct. App. Aug. 31, 200) (unpublished)); *see also* CAL. BUS. & PROF. CODE § 6147(a)(3).

"Alioto claimed additional compensation for related matters, as did the attorney in *Tishgart*, it would likely (perhaps conclusively) suggest undisclosed related matters existed, permitting Hoiles to void the Fee Agreement."[32]  The Tenth Circuit also noted that Alioto's initial attempt to collect 20% rather than 15% based upon an alleged oral agreement might be fatal to Alioto's claim to a contingency fee, if that attempt was a charge for an undisclosed related matter.[33]  Finally, the Tenth Circuit noted that "[a]lthough contract interpretation is a question of law for the court, resort to extrinsic evidence may be required in this case . . . [a]nd that extrinsic evidence, at least as to whether [or not] the Fee Agreement covered the shares of Hoiles' ex-wife and daughters, is disputed."[34]  On remand,[35] both parties agreed that whether or not a contract existed was a matter of law for the trial court to decide and that there were no matters on that issue that needed to go to the jury.  Each of the parties requested the Court enter summary judgment in his favor based on the undisputed facts and legal issues outlined in the briefs.[36]

---

[32]  *Hoiles*, 341 Fed. Appx. at 441 (discussing *Tishgart,* 2004 Cal. App. Unpub. LEXIS 8071, 2004 WL 1941193); *see also* Cal. Bus. & Prof. Code § 6147(a)(3).

[33]  *Hoiles*, 341 Fed. Appx. at 441; *see also* Cal. Bus. & Prof. Code § 6147(a)(3).

[34]  *Hoiles*, 341 Fed. Appx. at 442 (quoting *ASP Props. Group, L.P. v. Fard, Inc.*, 35 Cal. Rptr. 3d 343, 349-50, 133 Cal. App. 4th 1257 (Cal. Ct. App. 2005)).

[35]  Following the 2009 remand from the U.S. Court of Appeals for the Tenth Circuit, Judge John L. Kane recused himself and the case was reassigned to Judge Christine M. Arguello.

[36]  *See* Doc. # 568, Motion for Summary Judgment by Plaintiff Joseph M. Alioto, at p. 2; Doc. #565, Defendant Timothy C. Hoiles's Brief Regarding Legal Issues Identified by the Court, at p. 50.

## II. DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* FED. R. CIV. P. 56(c).  "An issue of material fact is genuine where a reasonable jury could return a verdict for the party opposing summary judgment."  *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 797 (10th Cir. 1997) (citing *Wolf v. Prudential Ins. Co. of Am.,* 50 F.3d 793, 796 (10th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986))).  The Court shall review the pleadings and evidence in the light most favorable to the nonmoving party.  *Seymore*, 111 F.3d at 797 (citing *Wolf*, 50 F.3d at 797).  When the nonmoving party bears the burden of proof at trial on a dispositive issue, in order to defeat a properly-supported motion for summary judgment, the nonmoving party must "go beyond the pleadings and by [the nonmoving party's] affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(c), (e)).

### B.    Analysis

#### 1.    Interpretation of the Contingency Fee Agreement

The factual question regarding whether the Contingency Fee Agreement covered the shares of Hoiles' ex-wife and daughters is highly disputed.  According to Hoiles'

affidavit, Hoiles "was obtaining legal services only for [himself]."[37]  According to Alioto, Alioto was retained to secure a fair price for the "Family Shares," which included not only Hoiles' shares, but also, the shares of Hoiles' ex-wife and grown daughters.[38]

### a)    The Terms of the Agreement

Under California contract law, the provisions of a contract are to be construed "most strongly" against the party who drafted the contract, or otherwise "caused the uncertainty to exist."  CAL. CIV. CODE § 1654.  In addition, attorney fee agreements are "strictly construed against the attorney."  *Severson & Werson v. Bolinger*, 235 Cal. App. 3d 1569, 1572 (Cal. Ct. App. 1991).[39]  According to California law, the "language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."  CAL. CIV. CODE § 1638; *see also* CAL. CIV. CODE § 1644 ("The words of a contract are to be understood in their ordinary and popular sense").

Alioto drafted the Contingency Fee Agreement.  Thus, if there is any uncertainty regarding its interpretation, the provisions of the Contingency Fee Agreement are to be strictly construed against Alioto.  Notwithstanding that principle, the clear terms of the Contingency Fee Agreement favor Hoiles' interpretation.  First, the Contingency Fee Agreement is addressed solely to Hoiles.  Second, the Contingency Fee Agreement is replete with singular references of "you" and "your shares."  Third, the Contingency Fee Agreement required only the signature of Hoiles, indicating agreement

---

[37]   Hoiles' Response, Attach. 2, at p. S.A.10, ¶ 13(a).

[38]   *See* Alioto's Br. at pp. 5-6; Alioto's Br., Ex. 8, Alioto Dep., at pp. 108, 111, 206.

[39]   Citing *Alderman v. Hamilton*, 205 Cal. App. 3d 1033, 1037 (Cal. Ct. App. 1988) (other citations omitted in original).

15

with the terms of the Agreement.  Nothing on the face of the Contingency Fee Agreement even hints at the prospect that Alioto also is representing Hoiles' ex-wife and two adult daughters.  As such, the Court finds that the provisions of the Contingency Fee Agreement, construed according to the legal standards set forth by California courts, unambiguously provides that Alioto was retained by Hoiles to provide legal services solely to Hoiles regarding shares owned solely by Hoiles.

> **b)   Parol Evidence**

In making this finding, the Court has not considered parol evidence. Consideration of parol evidence in construing the Contingency Fee Agreement would be proper only if the language of the Fee Agreement is ambiguous.  According to the California Court of Appeals, "[w]here the language of a contract is clear and does not involve an absurdity, it will be followed.  Thus, a court may interpret a contract without recourse to extrinsic evidence if the contract terms are unambiguous.  *W. Bay Builders v. Kamran & Co.*, 2009 Cal. App. Unpub. LEXIS 6329 at *44 (citing CIV. CODE. § 1638) (unpublished decision); *see also Weil v. Federal Kemper Life Assurance Co.*, 7 Cal. 4th 125, 152 (1994) ("The first rule of interpretation declares that when the contractual language is 'clear and explicit' and does not lead to an absurdity, 'The language of the contract is to govern its interpretation'").  As stated, the Court finds the Contingency Fee Agreement is unambiguous; thus, it has not considered parol evidence in interpreting the terms of the Contingency Fee Agreement.

However, even assuming *arguendo* that the language of the Contingency Fee Agreement could somehow be construed as ambiguous, the extrinsic or parol evidence

in this case does not support Alioto's contention that he was retained to also represent the share interests of Hoiles' ex-wife and daughters. In addition to the findings set forth in the preceding section, the Court notes that the other parties allegedly being represented by Alioto were Hoiles' *ex*-wife and his two ***adult*** daughters. Nothing in the Contingency Fee Agreement or in the record indicates that Hoiles was authorized to act on behalf of his ex-wife and two adult daughters. Alioto has not come forward with any evidence that these otherwise legally-independent adults issued a power of attorney or other authorization which would clothe Hoiles with the authority to act on their behalf with respect to the sale of their shares or to retain the services of an attorney to represent them.

Having considered all of the evidence submitted by the parties on this issue, the Court concludes that, unfortunately for Alioto, the interpretation asserted by Alioto is not an interpretation that is reasonably susceptible based on the language of the Contingency Fee Agreement and the proferred evidence. *See Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (Cal. Ct. App. 1992) (After receiving, without admitting, all credible evidence concerning the parties' intentions, the trial court rules on the "threshold determination of 'ambiguity' (*i.e.*[,] whether the proferred evidence is relevant to prove a meaning to which the language is reasonably susceptible)"). The Court instead finds Hoiles' interpretation to be proper and thus finds, as mentioned, that the Agreement covered Alioto's representation of Hoiles only.

## 2.     Related Matters

The Court now considers whether Alioto is seeking fees for matters related to his agreement with Hoiles, and, if so, whether that renders the Contingency Fee Agreement voidable.  In California, contingency fee contracts must be in writing and must include "[a] statement as to what extent, if any, the client could be required to pay any compensation to the attorney for related matters that arise out of their relationship not covered by their contingency fee contract."  CAL. BUS. & PROF. CODE § 6147(a)(3). "Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff [client], and the attorney shall thereupon be entitled to collect a reasonable fee."  CAL. BUS. & PROF. CODE § 6147(b).  The term "related matters" is not defined in § 6147 and has not been defined by the courts in the context of a contingency fee arrangement.  However, in a case involving insurance coverage for "related" claims, where "related" was not defined in the policy, the California Supreme Court concluded that "the term 'related' as it is commonly understood and used encompasses both logical and causal connections."  *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal. 4th 854, 873 (1993).

In determining the meaning of "related," the California Court utilized the "proper and settled approach" for contract interpretation; and, stated that the "'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' . . . controls judicial interpretation . . . [t]his reliance on common understanding of language is bedrock."  *Id.* at 867 (citing CAL. CIV. CODE § 1636) (other citations omitted); *see also Professional Engineers in Cal. Gov't., v. Kempton*, 40 Cal. 4th 1016, 1043 (2007)

("fundamental principles of statutory construction, applicable equally to constitutional provisions, statutes and initiatives, require us to give words in such texts their ordinary meanings") (citation omitted).  In *Bay Cities*, 5 Cal. 4th at 868, the California Supreme Court noted specific definitions for "related," including "standing in relation; connected; allied; akin" (BLACK'S LAW DICT. 1288 (6th ed. 1990)); and "having a casual connection as well as the 'notion of similarity'" (*O'Doan v. Ins. Co. of North America*, 243 Cal. App. 2d 71, 78 (1966)).  The Court concluded that the errors by the attorney in *Bay Cities* were "related" because they arose as to the same client, were committed by the same attorney, resulted in the same injury, and no objectively reasonable insured under the insurance policy could have expected that he would be entitled to coverage for two claims under the policy."  5 Cal. 4th at 873.

Regardless of whether the Contingency Fee Agreement included compensation for the shares of Hoiles' ex-wife and grown daughters, based on Alioto's own testimony and using the common understanding of "related" as stated by the California Supreme Court in *Bay Cities*, the Court finds that related matters did exist in this case.  In order to justify his seeking a 20% contingency fee, as opposed to the 15% contingency fee outlined in the Contingency Fee Agreement, Alioto testified[40] that he felt justified to seek an additional amount of compensation after the Contingency Fee Agreement was in place "because, in fact, I did have to change what I did.  I had to move from a situation of trying to recover only for Mr. Hoiles to a situation trying to recover for more than

_____
[40]   Doc. #566, Appendix to Hoiles' Br., Ex. 9, Reporter's Tr. of Jury Trial, Day 3, at p. A.266.

Mr. Hoiles."[41]  When asked "[e]xactly what is it extra that you did for a twenty percent fee as opposed to a fifteen percent fee," Alioto testified that he "now had to counsel [Hoiles] and give him advice and attempt with [Alioto's] group to create strategies and tactics that now would yield not just a competitive price for [Hoiles] alone and for his family and their shares, but now a much broader one . . . ."[42]  Alioto explained further that what he was doing "now had to be enough not just for [Hoiles], but for others, as well . . . .  We were always talking about the 667 [thousand shares].  Now it's not 667 [thousand shares] anymore.  Now [Hoiles] just was saying, you know, 'I'm not going to do it unless these other folks also get the same thing.'"[43]

These statements reflect an understanding on the part of Alioto that at some point in time **after** the parties entered into the original Contingency Fee Agreement, Alioto's understanding of nature and scope of his legal representation changed such that it encompassed seeking a fair share price for the shares of individuals other than Hoiles, Hoiles' ex-wife and Hoiles' daughters.[44]  The existence of a related matter also is buttressed by Alioto's trial testimony that he had a right to enforce an oral fee agreement against Hoiles because "there are circumstances under which . . . oral contracts are enforceable . . . if [one] can show that [one has] changed [one's] conduct

---

[41]  *Id.* at ll. 11-14; *see also* Alioto's Br., Ex. 8, Alioto Dep., at pp. 197-98.

[42]  Alioto's Br., Ex. 8, Alioto Dep., at p. 197.

[43]  *Id.* at pp. 197-98.

[44]  Hoiles' Br., App., Ex. 9, Reporter's Tr. of Jury Trial, Day 3, hereinafter "Trial Tr. Day 3", at A.266.

in accordance with the oral contract, **after** [one has] already made a [written] contract, which we already did."[45]  Hoiles' attempt to seek contribution for Alioto's fees from his other family members, Pam and Penny, also supports the existence of a related matter distinct from the original representation undertaken in the Contingency Fee Agreement.[46]  Thus, Alioto's own testimony indicates that, at some point after Alioto and Hoiles entered into the Contingency Fee Agreement, Alioto felt justified in seeking additional compensation beyond that contemplated in the Contingency Fee Agreement, because he believed that he no longer was dealing just with Hoiles' shares or even the combined 667,000 shares belonging to Hoiles and Hoiles' ex-wife and daughters. Rather, he also was dealing with the related matter of shares held by other Freedom Communication shareholders.[47]

Regardless of whether the Contingency Fee Agreement encompassed the shares of Hoiles' ex-wife and two adult daughters, Alioto's attempt to recover additional compensation, combined with Alioto's testimony as to his justification for seeking such additional compensation, provides conclusive evidence that at least one related matter existed, *i.e.*, receiving a fair share price for shareholders other than Hoiles.  Because Alioto is attempting to collect fees for at least one related matter and because the Contingency Fee Agreement does not include a related matter statement, the

---

[45]   Alioto's Response, Ex. 3, "Exhibit 83", Alioto Trial Test., at p. 408, ll. 8-15 (emphasis added).

[46]   *See* Alioto's Br., Ex. 15, Ex. 16.

[47]   *See* Hoiles' Br., App., Ex. 9, Trial Tr. Day 3, at p. A.266; *see also* Alioto's Br., Ex. 8, Alioto Dep., at pp. 197-98.

Contingency Fee Agreement is voidable at Hoiles' option.  *See Hoiles*, 341 Fed. Appx.

at 441 (discussing *Tishgart,*2004 Cal. App. Unpub. LEXIS 8071, 2004 WL 1941193)

("If Alioto claimed additional compensation for related matters, as did the attorney in

*Tishgart*, it would likely (perhaps conclusively) suggest undisclosed related matters

existed, permitting Hoiles to void the Fee Agreement.").

### 3.    Whether Hoiles Voided the Contingency Fee Agreement

On August 8, 2007, the trial court concluded that Hoiles effectively voided the

Contingency Fee Agreement on January 21, 2004.[48]  The U.S. Court of Appeals for the

Tenth Circuit declined to address this issue on appeal.  *See Hoiles*, 341 Fed. Appx. at

442 ("[t]he detailed issues, as well as these other [issues], are best addressed by the

district court in the first instance").  For the reasons discussed below, this Court concurs

with the August 8, 2007 trial court decision, and concludes that Hoiles effectively voided

the Contingency Fee Agreement.

In the instant case, after Hoiles and Alioto had entered into the Contingency Fee

Agreement, Hoiles sent a letter dated January 21, 2004, instructing Alioto to "take no

further actions as a lawyer on [Hoiles'] behalf"; and, in accordance with paragraph 5 of

the Contingency Fee Agreement, requesting that Alioto submit "a billing statement for

[his] legal services at $1000 an hour for [his] time."[49]  In short, Hoiles both instructed

Alioto to take no further action as his attorney and requested an accounting regarding

---

[48]   *Alioto*, 2007 U.S. Dist. LEXIS 57893, at *11; *Alioto*, 2007 U.S. Dist. LEXIS 93915 at *5, *6, *14.

[49]   Alioto's Br., Ex. 42.

the attorney's fees.  *See Service Employees International Union, Local 87*, 2004 Cal. App. Unpub. LEXIS 9112 at *4.  Hoiles' letter explicitly states Hoiles' intention to pay his attorney at the hourly rate specified in the Contingency Fee Agreement, thus, implicitly declining to pay Alioto on a contingent basis.  *See Fergus v. Songer*, 150 Cal. App. 4th 552, 570 (Cal. Ct. App. 2007) (holding a client's intention to void a contingent fee agreement does not have to be explicit to effectively void the agreement).  This Court concludes that the January 21, 2004 letter from Hoiles to Alioto, which included an instruction to engage in no further legal services on Hoiles' behalf and which also included a statement regarding payment at an hourly rate, was sufficient to void the Contingency Fee Agreement.

### 4.    Whether Hoiles Ratified the Contingency Fee Agreement

Alioto contends that, subsequent to sending the January 21, 2004 letter voiding the Contingency Fee Agreement, Hoiles ratified the Contingency Fee Agreement. Alioto concedes that this issue is governed by *Fergus v. Songer*, 150 Cal. App. 4th 552, 571 (Cal. Ct. App. 2007) (holding that ratification of a contingent fee agreement requires knowledge by the client that he possesses the right to void the agreement because the "very essence either of an election or ratification is that it is done advisedly, with full knowledge of the party's rights").  Nonetheless, Alioto argues that two letters written by Hoiles in February 2004 demonstrate ratification by Hoiles.[50]  The first such letter included the statements: "I still consider you to be bound by our attorney-client relationship and to have obligations under our contract, so I want to be clear, all of these

---

[50]   Alioto's Br. at pp. 56-58.

instructions are from me as your client.  The request that you provide no further legal services at this time, still stands, however."[51]  The second letter, dated February 20, 2004, is from Hoiles to Messrs. Shulman, Stratmore and Schwartz in which Hoiles stated that he has "not terminated Joe Alioto, nor has he resigned as my lawyer."[52]

Alioto asserts that Hoiles' statements in these letters indicate a ratification of the Contingency Fee Agreement because Hoiles asserts that he and Alioto still have an attorney-client relationship and that Alioto still has obligations under the contract. However, the Court finds no support within either of these letters for the conclusion that Hoiles intended to "ratify" the Contingency Fee Agreement or that he had knowledge of his right to void the Contingency Fee Agreement.  This Court agrees with Judge Kane's analysis in his December 21, 2007 Order.  Attorney fee agreements are not considered ordinary, arms-length contracts; rather, they are governed by statutes like § 6147 that specifically delineate the required contents of the agreement for the purposes of protecting clients and assuring fee agreements are fair and understood by clients. *Alderman v. Hamilton*, 205 Cal. App. 3d 1033, 1037 (1988); *see also Severson & Werson*, 235 Cal. App. 3d at 1572 (attorney fee agreements are "strictly construed against the attorney").  In light of *Fergus v. Songer*, 150 Cal. App. 4th 552, 571 (Cal. Ct. App. 2007), to prove the defense of ratification (1) Alioto must show that Hoiles ratified the agreement with full knowledge of his right to void it; (2) the knowledge of Hoiles' attorneys as to the agreement's enforceability may not be imputed to Hoiles for

---

[51]  Alioto's Br., Ex. 43.

[52]  Alioto's Br., Ex. 44.

purposes of ratification; and, (3) Hoiles' actual knowledge as to the fee agreement's enforceability is only relevant to the extent he obtained such knowledge before he allegedly ratified the agreement.

Contrary to Alioto's assertions, Hoiles' letters to Alioto confirm that he requested that Alioto provide no further legal services. Nothing in these statements evidences an intent by Hoiles to reverse his decision of January 21, 2004, to cancel or void the Contingency Fee Agreement. In addition, nothing in these statements can be read as indicating that Hoiles was willing to pay Alioto a contingency fee for any legal services provided, as opposed to the hourly rate, as indicated in the January 21, 2004 letter from Hoiles to Alioto. There is no indication that Hoiles learned independently from his attorneys that the fee agreement did not comply with § 6147 or any other state's laws. In fact, there is undisputed, direct evidence, in the form of deposition testimony of Hoiles, Barletta, Susemihl, and Quan, that Barletta, Susemihl, and Quan never advised Hoiles as to the agreement's statutory compliance.[53] Confirming Hoiles' testimony that he did not receive advice from his attorneys regarding the agreement's enforceability, Barletta testified that he acted primarily as Hoiles' business advisor and that he assumed Susemihl or Quan would review the agreement before Hoiles signed it. Susemihl and Quan both testified that Hoiles sent them a copy of the agreement as an FYI, but neither read it nor did they provide advice to Hoiles on the agreement's enforceability. There is no evidence in the record to contradict these statements.

---

[53] Doc. # 496, Hoiles' Mot. for Summary Judgment on Issue of Ratification ("Hoiles' Mot."), Attach. #5, Dep. of Joseph F. Barletta, 12/20/2004, at p. 46, ll. 8-9, p. 117, l. 1-p. 118, l. 9, p. 119; Attach #4, Dep. of Peter M. Susemihl, November 4, 2004, at p. 40, ll. 15-17, p. 45, ll. 2-16; Attach. #3, Dep. of Paul Quan, 12/14/2004, at p. 18, l. 21-p. 19, l. 15.

As such, the Court finds no evidence that Hoiles had the requisite knowledge regarding his right to void the Contingency Fee Agreement. The fact that Hoiles may have believed that Alioto and Hoiles still had an attorney-client relationship provides no evidence regarding Hoiles' knowledge regarding his right to void the Contingency Fee Agreement. Similarly, such belief provides no evidence of any intention on the part of Hoiles to compensate Alioto on a contingent basis (as opposed to the hourly basis Hoiles demanded in his January 21, 2004 letter to Alioto).

Alioto's contention that the knowledge of Hoiles' attorneys can be imputed to Hoiles is contrary to California law which provides "it is an inherent element of ratification that the party to be charged with it must have fully known what he was doing." *Fergus*, 150 Cal. App. 4th at 571 (quoting *Brown,* 38 P. 507; 104 Cal. at 676); *Gallagher v. California Pacific Title & Trust Co., 57 P.2d 195, 201 (Cal. Ct. App. 1939)*, ("The doctrine of constructive knowledge of material facts . . . does not generally obtain in the case of ratification, as ordinarily it is what the principal knows, and not what he has mere legal notice of, that is to be considered in determining whether there has been ratification"). None of the cases cited by Alioto, in support of his contention that knowledge of Hoiles' attorneys can be imputed to Hoiles, addresses constructive or imputed knowledge in the context of ratification. Thus, these cases are factually distinguishable and Alioto's reliance thereon is misplaced.[54]

---

[54] *See Stalberg v. W. Title Ins. Co.*, 230 Cal. App. 3d 1223, 1230-31 (Cal. Ct. App. 1991) (knowledge regarding the timing of the discovery of a property deed in the context of breach of fiduciary duty and slander); *Watson v. Sutro*, 86 Cal. 500, 525-26 (1890) (knowledge regarding infirmity of title); *People v. Amerson*, 151 Cal. App. 3d 165, 169 (Cal. Ct. App. 1984) (knowledge of defense counsel imputed to client regarding waiver of rights under Cal. Penal Code § 1170.8); *Nelson v. Nelson*, 131 Cal. App. 126, 133 (Cal. Ct. App. 1933) (imputing knowledge

The Court finds no evidence upon which a trier of fact could reasonably conclude that the two letters sent by Hoiles to Alioto after January 21, 2004 constituted a ratification of the Contingency Fee Agreement. Even assuming that one or both of the two letters could be interpreted as ratifications of the Contingency Fee Agreement, the Court further concludes that there is no evidence upon which a trier of fact reasonably could conclude that Hoiles possessed the requisite knowledge of his right to void the Contingency Fee Agreement.

Having found the Contingency Fee Agreement was voidable due to noncompliance with CALIFORNIA BUSINESS AND PROFESSIONS CODE § 6147; that it was voided by Hoiles on January 21, 2004; and, that it was not ratified by Hoiles, the Court concludes that Alioto's claim to enforce the Contingency Fee Agreement fails and summary judgment for Hoiles is proper on this claim based on the undisputed evidence.[55]

### 5. Alioto's Fraud and Misrepresentation Claims

Alioto concedes that his fraud and misrepresentation claims arise only if the Contingency Fee Agreement is enforceable.[56] Due to the Court's finding that the

---

of fraud of an attorney to his client under agency law); *Hanlon v. W. Loan & Bldg. Co.*, 46 Cal. App. 2d 580, 596 (Cal. Ct. App. 1941) (imputing knowledge of an attorney to the client regarding knowledge of a deed of trust).

[55]  Hoiles also contends that the Contingency Fee Agreement does not comply with CAL. RULES OF PROF'L CONDUCT, Rule 3-300 (1992) and CAL. BUS. & PROF. CODE § 6148 (2000). *See* Hoiles' Br., at pp. 19-27. However, as the Court has concluded that the Contingency Fee Agreement does not comply with CAL. BUS. & PROF. CODE § 6147, the Court declines to address these issues.

[56]  Alioto's Br. at p. 58 ("Alioto's fraud and misrepresentation claims arise only if . . . the Fee Agreement is enforceable.").

Contingency Fee Agreement was voided effectively, Alioto's fraud and misrepresentation claims also fail. Accordingly, summary judgment shall enter in favor of Hoiles on Alioto's claims for fraud and misrepresentation.

### 6. Alioto's *Quantum Meruit* Claim

Alioto's sole remaining claim is that of *quantum meruit*. Before evaluating the merits of this claim, the Court must decide whether California or Colorado law applies. *Hoiles*, 461 F.3d at 1238, n.9.

### a) Whether Colorado or California Law Applies

"A federal court in a diversity case applies the choice of law principles of the state in which it sits." *Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1281 (10th Cir. 2003) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941); *Progressive Cas. Ins. Co. v. Engemann*, 268 F.3d 985, 987 (10th Cir. 2001)).

Colorado has adopted the Restatement (Second) approach, *i.e.*, the most significant relationship approach, for actions based in contract. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 447 (1979); *see also* Restatement (Second) of Conflict of Laws ' 188 (1971). "A claim for *quantum meruit* is essentially based on implied contract." *Camas Colorado, Inc. v. Bd. Of County Comm'rs*, 36 P.3d 135, 139 (Colo. Ct. App. 2001).

According to Colorado law, the factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 188 (1), (2), § 6 (1971); *see also Wood Bros. Homes, Inc.*, 198 Colo. at 447.

Relevant to the Court's review of these seven factors is the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and, the domicile, residence, nationality, place of incorporation and place of business of the parties.  Restatement (Second) of Conflict of Laws § 188 (2).

In determining whether California or Colorado law applies to Alioto's claim of *quantum meruit* for the recovery of attorney's fees, the first factor to be evaluated is the needs of the interstate and international systems.  *See* Restatement (Second) of Conflict of Laws § 188 (1), (2), § 6(2)(a) (1971); *see also Wood Bros. Homes, Inc.*, 198 Colo. at 447.  The purpose of this factor is "to further harmonious relations between states and to facilitate commercial intercourse between them."  Restatement (Second) of Conflict of Laws § 6 cmt. d. (1971); *Hoiles*, 461 F.3d at 1230.  In the instant case, Alioto did not travel to Colorado to seek Hoiles' business, rather Hoiles and another of his attorneys traveled to California in order to request Alioto's services.  The Contingency Fee Agreement was negotiated in California and, although Alioto's co-counsel once traveled to Hoiles' office in Colorado to review Hoiles' files, most of the

services provided by Alioto and his team were performed in California.[57]  The complaint drafted by Alioto was to be filed in California state court and it alleged antitrust violations under California law.  It is likely that attorneys in California would be less willing to provide services to Colorado residents if the Court were to apply Colorado law under these circumstances.  For these reasons, this factor favors the application of California law to Alioto's *quantum meruit* claim for attorney's fees.

The second and third factors in the choice of law analysis are the relevant policies of the forum and of other interested states and the relative interests of those states in the determination of the particular issue.  *See* Restatement (Second) of Conflict of Laws ¶ 188 (1), (2), ¶ 6(2)(b), (c) (1971); *see also Wood Bros. Homes, Inc.*, 198 Colo. at 447; *supra* pp. 26-27.  Because Alioto is licensed by California as an attorney and Hoiles is a Colorado resident who sought legal services, both California and Colorado have an interest in the determination of whether Alioto is entitled to an attorney's fee under *quantum meruit*.  The Court notes, however, that California statutes and rules governing the conduct of California attorneys apply to those attorneys regardless of the residency of their clients.  *See, e.g.*, CAL. BUS. & PROF. CODE § 6147 (2000); CAL. RULES OF PROF'L CONDUCT, Rule 2-200(A)(1) (1992).  In this case, California has a stronger interest than Colorado in ensuring that Alioto complies with its statutes and rules governing the provision of legal services and in the determination of a reasonable fee when these statutes and rules are violated.  *Hoiles*, 461 F.3d at 1232 (*quoting Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975) ("States have a compelling

---

[57]  Stipulated Facts, ¶ 13.  *See also Hoiles*, 461 F.3d at 1230.

interest in the practice of professions within their boundaries") (*citing Int'l Tele-Marine Corp. v. Malone & Assocs., Inc.*, 845 F.Supp. 1427, 1431 (D. Colo. 1994))).  California's interest is further enhanced by the fact that Hoiles traveled to California to seek Alioto's services, negotiated a contract for these services in California, and received services that largely were provided by Alioto in California.  The Court concludes that factors two and three both favor the application of California law to Alioto's claim for attorney's fees under *quantum meruit.*

The fourth factor relevant to the determination of the appropriate choice of law is the protection of justified expectations.  *See* Restatement (Second) of Conflict of Laws § 188 (1), (2), § 6(2)(d )(1971); *see also Wood Bros. Homes, Inc.*, 198 Colo. at 447; *supra* pp. 26-27.  Both of the parties originally expected that their Contingency Fee Agreement would be valid and enforceable and, hence, that the Contingency Fee Agreement would govern the circumstances under which Alioto would be entitled to a fee and the amount of such fee.  *See Hoiles*, 461 F.3d at 1232 ("neither party disputes that they intended to enter into a contingent fee agreement").  However, the parties may have some expectations regarding the circumstances under which Alioto would be entitled to a fee if the Contingency Fee Agreement was determined to be unenforceable.  As previously mentioned, Hoiles traveled to California to seek Alioto's services, negotiated a contract for these services in California, and received services that largely were provided by Alioto in California.  Therefore Alioto's potential expectation that his recovery of an attorney's fee in such an instance would be governed by *quantum meruit* under California law is reasonable, especially as

compared with any potential expectation on the part of Hoiles that Colorado law would apply under these circumstances. For these reasons, the Court concludes that factor four also favors the application of California law.

The fifth factor requires analysis of the basic policies underlying the particular field of law, *i.e.*, whether attorney's fees can be recovered based on the theory of *quantum meruit* and, if so, what is a reasonable attorney's fee. *See* Restatement (Second) of Conflict of Laws § 188 (1), (2), § 6(2)(e) (1971); *see also Wood Bros. Homes, Inc.*, 198 Colo. at 447; *supra* pp. 26-27.

Under California law, "*Quantum Meruit* refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.'" *Huskinson & Brown v. Wolf,* 84 P.3d 379, 381, 32 Cal. 4th 453, 458 (2004) (quoting *Long v. Rumsey*, 12 Cal. 2d 334, 342 (1938)). A party attempting to recover under *quantum meruit* must show that "the circumstances were such that 'the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made.'" *Id.* (quoting *Estate of Mumford*, 173 Cal. 511, 523 (1916) (other citations omitted)). A "person who renders services under an invalid [ ] contract . . . may secure *quantum meruit* for the value of those services." *Orella v. Johnson*, 38 Cal. 2d 693, 697 (1952) (citation omitted); *see also Fracasse v. Brent*, 6 Cal. 3d 784, 796 (1972) ("He may treat the contract as rescinded and may recover upon a *quantum meruit* so far as he has performed") (citations omitted).

Under Colorado law, *quantum meruit* is founded upon the principle of equity. *Mullens v. Hansel-Henderson*, 65 P.3d 992, 999 (Colo. 2002). In situations where "an attorney completes the legal services for which he was retained, the fact that the underlying fee agreement was unenforceable does not in itself preclude the attorney from being paid the reasonable value of his services." *Id.* When the attorney has a "good faith belief that he would receive an agreed upon compensation for his services," it would be unjust to allow the client to receive the benefit of the attorney's services without providing any compensation. *Id.*

Thus, under both California law and Colorado law, the policies regarding *quantum meruit* are the same: it is unjust for a client to retain a benefit of legal services in situations where there was a reasonable expectation by both parties that compensation to the attorney is appropriate.

The Court also notes that California law and Colorado law appear nearly identical with respect to the factors relevant to determining whether an attorney's fee is reasonable. *See* CAL. R. PROF. CONDUCT 4-200 (1992); COLO. R. PROF. CONDUCT 1.5 (2002). Seven of the eight factors relevant in Colorado are indistinguishable from the California factors; eight of eleven factors relevant in the California rule are also identical to those in the Colorado rule.[58] Colorado includes the factor of "fee customarily charged in the locality for similar legal services," while California includes the factors of "amount

---

[58] The mathematical discrepancy is due the fact that California divides one of Colorado's factors into two separate factors.

of the fee in proportion to the value of the services performed," the "relative

sophistication of the member and the client," and, the "informed consent of the client

to the fee."

Because there is scant difference between the policies of California and Colorado

law regarding both the recovery of attorney's fees under *quantum meruit* and the

determination of a reasonable attorney's fee, the Court concludes that the fifth factor

favors neither California law nor Colorado law.

The sixth factor is certainty, predictability, and uniformity of result. *See*

Restatement (Second) of Conflict of Laws § 188 (1), (2), § 6(2)(f)(1971); *see also Wood*

*Bros. Homes, Inc.*, 198 Colo. at 447. In this case, a Colorado citizen traveled to

California in order to request legal services from an attorney licensed in California; the

majority of said services were conducted in California; and, legal services and advice

were rendered in accordance with California law. In contrast, other than Hoiles'

residency in Colorado, the parties' contacts with Colorado were minimal. Under these

circumstances, the application of California law would create more certainty and

uniformity of result. A California attorney who negotiates in California an agreement

for services to be provided in California pursuant to California law should be able to

assume with relative certainty that his reimbursement for services would be governed

by California law. *See Hoiles*, 461 F.3d at 1233-34.

The final factor relevant to the determination of the choice of law analysis is ease

in the determination and application of the law to be applied. *See* Restatement

(Second) of Conflict of Laws § 188 (1), (2), § 6(2)(g)(1971); *see also Wood Bros.*

*Homes, Inc.*, 198 Colo. at 447.  As is apparent from the Court's previous discussion, both California and Colorado rules regarding the determination and application of a reasonable attorney's fee under a *quantum meruit* theory of recovery are nearly identical.  Thus, factor seven does not favor the application of either California law or Colorado law.

In summary, with respect to the seven factors of the most significant relationship test, five favor the application of California law, whereas none favor the application of Colorado law.  As such, the Court concludes that California law applies to Alioto's *quantum meruit* claim.

### b)      Applying California Law to Alioto's *Quantum Meruit* claim

Alioto's *quantum meruit* claim was determined by a jury which applied Colorado law.  Therefore, the Court must determine if the jury verdict on Alioto's *quantum meruit* claim can stand or if a new trial must be held in which California law is applied.  Alioto does not take issue with the jury's finding that he was entitled to an award of attorneys fees based on *quantum meruit*.  Rather, Alioto contends that a new trial must be held because, in determining the amount of a reasonable attorneys' fee, the jury was not allowed to consider three factors that they would be entitled to consider under California law: 1) that the parties' original fee agreement was a contingency fee agreement; 2) that the parties had agreed upon a 15% -20% contingency fee; and 3) that a percentage of the recovery could be considered by the jury in determining a reasonable fee.[59]

_____

[59]   With respect to this third alleged prejudicial error, the issue in this case is not whether a jury can ever consider awarding a percentage of the recovery as a reasonable fee.  Rather, the issue is whether a jury must be so instructed when a contingent fee agreement has been voided by the client.  Only one of the cases cited by Alioto in support of this argument is from a

*Quantum meruit*, Latin words for "as much as is deserved," is a legal theory based upon the principle that a person should not be obliged to pay, nor should another be allowed to receive, more than the value of the goods or services exchanged.  Thus, under the facts of this case, in which the Court has found that the Contingency Fee Agreement was voidable for failure to comply with the law of California, allowing the jury to in effect reinstate the Contingency Fee Agreement by awarding a percentage of Hoiles' recovery would violate both the purpose of CAL. BUS. & PROF. CODE § 6147 and the intent of the doctrine of *quantum meruit*.  Contrary to Alioto's assertions, California law does not hold "that the terms of an unenforceable contingent fee contract – including the percentage contained in the agreement – are relevant and admissible in determining a reasonable *quantum meruit* fee."[60]  In fact, the leading California case on point holds just the opposite.

In *Fergus v. Songer*, 150 Cal. App. 4th 552 (Cal. Ct. App. 2007), the trial court held a contingent fee agreement to be void for noncompliance with CALIFORNIA BUSINESS AND PROFESSIONS CODE § 6147.  The trial court instructed the *Fergus* jury

---

California Court; and, none of the cited cases is on point.  *See Gottlieb v. Welch*, 43 F.3d 474, 487 (10th Cir. 1994) (after special master determined attorneys' fees should be awarded as a percentage of the fund, trial court erred in awarding a lower fee based upon the reasonable lodestar analysis); *In re Quest Communications Int'l. Inc. Secs. Litig.*, 625 F. Supp. 2d 1143, 1147-48 (D. Colo. 2009) (attorneys pursuing class action litigation are entitled to an award of fees from any common fund created for the benefit of the class, generally based on a percentage of the common fund created by counsels' efforts); *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 552 (Cal. Ct. App. 2009) (appeal of court's award to class action counsel of an amount lower than that provided for in a settlement agreement not prejudicial error).  For these reasons, in the case at bar, the Court finds the aforementioned cases distinguishable; and, less persuasive than *Fergus*.  *See Fergus*, 150 Cal. App. 4th at 573.

[60]   *See* Alioto Brief at p. 59.

that during deliberations it could not "base compensation fees to [the attorney] on a contingency basis." On appeal, the court was faced with the issue of whether "the trial court erred in refusing to instruct the jury that, in determining a reasonable fee, it could consider the contingent nature of the fee arrangement." *Id.* at 572-73. The California Court of Appeal concluded that "[w]here, as here, a client exercises his right to void a contingency fee agreement, section 6147 does not permit the trier of fact to consider the contingent nature of the fee arrangement in determining a reasonable fee. If the contingency fee agreement is void, there is no contingency fee arrangement." *Id.* at 573. The court's rationale for this conclusion was "[t]he deterrent and protective purposes of Business and Professional Code section 6147 would be impaired if an attorney who was barred from enforcing a contingency fee agreement would nevertheless be entitled to a percentage of the recovery based on the contingent risk factor. The attorney would in effect be receiving a contingency fee even though the contingency fee agreement had been voided by the client." *Id.*

Alioto contends that this Court should disregard *Fergus*, and instead follow one of the ten cases cited in support of his argument.[61] Quantity of citations does not trump

_____

[61] Alioto's Br. at pp. 58-61. All of the cases cited by Alioto are distinguishable from the instant case and less persuasive than *Fergus*. *See Herbold v. Miller*, No. CV 02-01639 (C.D. Cal. Aug. 6, 2004) (unpublished, superceded by the holding in *Fergus*, and factually distinguishable); *In re Pacific Far East Line, Inc.*, 654 F.2d 664, 668 (9th Cir. 1981) (contingency fee agreement unenforceable due to client's bankruptcy, not lawyer's violation of § 6147); *LuMetta v. U.S. Robotics, Inc.*, 824 F.2d 768, 769 (9th Cir. 1987) (valid contract existed, dispute involved proper percentage to award as contingency fee); *Donfeld, Kelly & Rollman v. Bass*, 2002 WL 31160867 at *1, *3 (Cal. Ct. App. 2002) (unpublished and contingent fee unenforceable due to client's discharge of attorney); *George v. Double-D Foods, Inc.*, 155 Cal. App. 3d 36, 40 (Cal. Ct. App. 1984) (written contract of employment never executed by decedent, whose executrix wife sought recovery); *Offeman v. Robertson-Cole Studios, Inc.*, 251 P. 830, 835, 80 Cal. App. 1 (Cal. Ct. App. 1926) (oral employment contract unenforceable due to noncompliance with the statute of frauds); *Joost v. Sullivan*, 111 Cal. 286, 289, 292-93, (1896) (contract regarding a lien

37

the quality of *Fergus*, which the Court finds much more on point than any of the cases cited by Alioto.  Thus, the Court rejects Alioto's argument that a jury should be allowed to consider the Contingent Fee Agreement in deciding upon a reasonable fee for Alioto on his *quantum meruit* claim.

Alioto's final contention is that "under California law, Alioto's *quantum meruit* recovery should be based on all the work performed by the attorneys who were to be compensated from the contingent fee."  The only case cited by Alioto in support of this argument is *Huskinson & Brown, LLP v. Wolf*, 84 P.3d 379, 32 Cal. 4th 453 (2004).  Alioto correctly cites *Huskinson & Brown* for the proposition that in California "an attorney may recover from another attorney in *quantum meruit*."  Alioto then takes this holding and incorrectly asserts that "because Alioto may be liable to [other attorneys] for work they have performed, Alioto's recovery in *quantum meruit* from Hoiles" should include the work performed by these other attorneys.  However, *Huskinson & Brown* involved a dispute between attorneys and did not address the issue in the instant case, *i.e.*, whether an attorney (Alioto) is entitled to recover a fee in *quantum meruit* from the client (Hoiles) for work performed by other attorneys who have entered into a fee-sharing agreement with him (Alioto).  This Court agrees with the prior

on real property was not filed in the recorder's office as required); *Cazares v. Saenz*, 208 Cal. App. 3d 279, 281 (Cal. Ct. App. 1989) (obligations of contract discharged when plaintiff partner became incapable of performing the contract after being appointed to a judge's position); *Watson v. Wood Dimension, Inc.*, 209 Cal. App. 3d 1359, 1361 (Cal. Ct. App. 1989) (terminated employee sued to enforce oral employment contract regarding commissions on sales); *Ferrier v. Commercial Steel Corp.*, 142 Cal. App. 2d 424, 424, 425, 426-27 (Cal. Ct. App. 1956) (manual laborers sued contractor for compensation for services rendered where contract price allegedly too low).

two judges who have ruled on this issue and concludes that Alioto has not demonstrated that he has standing to recover fees in *quantum meruit* on behalf of other attorneys who are not parties to this action.

Alioto has failed to provide this Court with any authority for the proposition that he has standing to sue a client for attorney's fees generated by attorneys outside his firm. According to California law, a "person who renders services under an invalid [ ] contract . . . may secure *quantum meruit* for the value of those services." *Orella*, 38 Cal. 2d at 697; *see also Fracasse*, 6 Cal. 3d at 796 ("He may treat the contract as rescinded and may recover upon a *quantum meruit* so far as **he** has performed.") (emphasis added). The Court can find no authority for the contention that a party to an invalid contract can seek *quantum meruit* recovery for services rendered by a third party. For these reasons, the Court rejects Alioto's contention that it was improper for the jury to be instructed that they could not consider the work of the other attorneys in determining a reasonable fee.

The Court concludes that none of Alioto's arguments alleging prejudicial error as a result of the *quantum meruit* instructions that were given to the jury in the original trial of this case has merit. As such, the Court also finds no reason to disturb the jury's verdict on the *quantum meruit* claim.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Alioto's motion for summary judgment (Doc # 568). Instead, given the undisputed facts and the Court's resolution of the legal issues, the Court GRANTS summary judgment to Hoiles on Alioto's claims of

breach of contract, fraud and misrepresentation.  (*See* Doc. # 565 at 50.)  In addition,

the final judgment in favor of Alioto on his unjust enrichment claim in the amount of

$1,150,000, minus $500,000 previously paid to Alioto, shall be REINSTATED.

DATED:  September   21  , 2010

BY THE COURT:

_____

CHRISTINE M. ARGUELLO
United States District Judge